STATE of Missouri, Respondent,

v.

Harold Leroy TATE, Appellant.

No. 52179.

Supreme Court of Missouri,
Division No. 2.

June 12, 1967.

Motion for Rehearing or to Transfer to Court en Banc Denied July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Timothy D. O'Leary Sp. Asst. Atty. Gen., Kansas City, for respondent.

Karl F. Lang, St. Louis, for appellant.

DONNELLY, Judge.

Appellant, Harold Leroy Tate, was convicted of carrying a dangerous and deadly weapon about his person under § 564.610 RSMo 1959, V.A.M.S. (as amended Laws 1965, H.B. No. 271), by a jury in the Circuit Court of the City of St. Louis, Missouri, and his punishment under the provisions of the Habitual Criminal Act, § 556.-280 RSMo 1959, V.A.M.S., was assessed at imprisonment in the Workhouse of the City of St. Louis for a term of one year. Following rendition of judgment and imposition of sentence an appeal was perfected to this Court.

The Amended Information charged appellant with violation of the Habitual Criminal Act, and "that the said HAROLD LEROY TATE * * * on December 5, 1965, at the City of St. Louis aforesaid, did unlawfully and feloniously carry concealed about his person a certain deadly and dangerous weapon, to-wit: .22 caliber automatic pistol; contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State."

Section 564.610 RSMo 195, V.A.M.S. (as amended Laws 1965, H.B. No. 271) reads in part as follows: "If any person shall carry concealed upon or about his person a dangerous or deadly weapon of any kind or description, * * * he shall, upon conviction, be punished by imprisonment in the penitentiary not exceeding five years, or by fine of not less than one hundred nor more than one thousand dollars, or by imprisonment in the county jail not less than fifty days nor more than one year, or by both such fine and imprisonment; * * *."

On December 5, 1965, at 12:50 a. m., Sgt. Edward Jones, a police officer in the City of St. Louis, was operating a patrol car on Sarah Street in the City of St. Louis. As he turned left onto Ashland Avenue he heard what sounded like a gunshot. He drove about ten or fifteen feet and stopped in the middle of the street. He saw appellant standing in the doorway at 4136 Ashland Avenue. He then heard a second gunshot and saw a flash of fire about a foot above appellant's head and on the right side of appellant's head. Jones was about forty feet from appellant when he saw the flash of fire. He was unable to see appellant's arms, hands or gun at that time. Jones got out of the car and appellant started down the steps from the doorway. As Jones and appellant approached each other, Jones observed appellant at all times and appellant's arms were "at his sides." Appellant was wearing some kind of coat. Jones could not see appellant very well because it was nighttime. When appellant reached the sidewalk, he walked in an easterly direction a few steps and then threw his gun into the gutter. At that time, Jones was five to ten feet behind appellant. Jones did not see the gun at any time until after it was thrown in the gutter. When he saw it in the gutter, he arrested appellant. During the entire incident, Jones and appellant were the only two people on Ashland Avenue. Appellant did not testify.

On the issue of concealment of the weapon, Jones' testimony relates to what occurred just before appellant threw his gun in the gutter.

On direct examination Jones testified as follows: "Q After you got out of the car and he was heading east, was he on the sidewalk at this time? A He was walking on the sidewalk.

* * * * * *

Q What, if anything, happened then? A Well, he walked about five or six steps, then he reached his hand into his right front trouser pocket. It appeared he threw something in the gutter; I heard what seemed to be metal hitting the ground.

* * * * * *

Q Now you saw Mr. Tate put his hand in his pocket, is that correct? A In his right trouser pocket. Q Did he place it all the way in the trouser pocket? A I don't recall that; I wouldn't be able to say. All I know is the gesture was his hand went into his right front trouser pocket. Q His hand did go into his pocket? A Yes. How far, I don't know."

On cross-examination, Jones testified as follows: "Do you actually know if he put his hand in his pocket? A I— Q What was your answer? Do you know, actually know if he put his hand in his pocket? A I coudn't say for sure he actually put his hand in his pocket. Q He might have had the gun at his side and thrown it down, isn't that true; in other words, when he turned from you, his right hand was over here and he was walking, started to walk east on Ashland, he would be out of your view, would he not? A True. Q True? A I

had walked behind him. Q You were coming in this direction?

\* \* \* \* \* \*

A By this time I am behind him. It appeared he put his hand in his pocket. Q But you can't say for sure? A. I couldn't say for sure. Q He could have had his gun by his side the whole time he was walking down the steps, isn't that true? A I don't know. It appeared to be that he put his hand in his pocket."

 In Missouri, concealment is an essential element of the offense charged. State v. Duggins, 284 Mo. 633, 225 S.W. 987. "Generally, the test of concealment is whether the weapon is so carried as not to be discernible by ordinary observation." State v. Bordeaux, Mo.Sup., 337 S.W.2d 47, 49.

We are of the opinion that the evidence adduced is not sufficient to sustain a finding that appellant had a dangerous and deadly weapon concealed about his person on the occasion involved.

It is conceded that appellant was carrying a dangerous and deadly weapon. However, the essence of the offense charged is carrying it concealed about the person. It is uncontradicted that the gun was "discernible by ordinary observation," and not concealed, when Jones heard the gunshot and saw the flash of fire about a foot above and to the right of appellant's head. Therefore, the State's case must stand or fall on whether the evidence is sufficient to show appellant concealed the gun during the period after he fired the second shot and before he threw the gun in the gutter. Jones testified that after appellant reached the sidewalk and turned east it appeared appellant "reached his hand into his right front trouser pocket." However, Jones did not see the gun *at any time* until after he found it in the gutter. Jones did not observe appellant place the gun in his pocket. Jones did not observe appellant take the gun from his pocket. There is no evidence from which we can reasonably infer that the gun was concealed in appellant's pocket.

Therefore, the evidence "amounts to nothing more than a showing that appellant had an opportunity to carry the weapon concealed. Whether or not he did carry the weapon concealed is left to mere conjecture, and the finding of the jury that he did carry the weapon concealed has no evidentiary basis. Under such circumstances, the verdict cannot stand." State v. Duggins, supra, 284 Mo. 633, 636, 225 S.W. 987, 988.

We hold the State's evidence insufficient to prove appellant guilty of carrying a dangerous and deadly weapon concealed about his person. The trial court should have directed an acquittal. The judgment is reversed and defendant discharged.

All of the Judges concur.