**STATE of Missouri, Respondent,**

v.

**Harold Count JOHNSON, Appellant.**

**No. 56809.**

Supreme Court of Missouri,
Division No. 2.

Dec. 10, 1973.

Rehearing Denied Jan. 14, 1974.

John C. Danforth, Atty. Gen., Richard E. Vodra, Asst. Atty. Gen., Jefferson City, for respondent.

R. Richard Straub, Kathianne Knaup, St. Louis, for appellant.

HENLEY, Presiding Judge.

Harold Count Johnson, defendant, was found guilty by a jury of carrying a concealed weapon,[1] a handgun found by police during a "stop and frisk." He was sentenced by the court to imprisonment for two years and has appealed.[2] We affirm.

The main issue presented is whether the revolver and testimony of the officers who took it from defendant's person were admissible in evidence. Defendant contends that the search of his person and seizure of the gun violated his rights under Mo. Const. Art. I, § 15, V.A.M.S., and the U. S.Const. Amends. IV and XIV, and that evidence produced thereby was not admissible and should have been suppressed.[3] The state contends that the actions of the offi-

---

1. Section 564.610, RSMo 1969. References to sections of the statutes are to this revision and V.A.M.S.

2. The notice of appeal was filed prior to January 1, 1972, the effective date of the 1970 amendment to Mo.Const. Art. V, § 3, and we retained jurisdiction to dispose of the case as required by the schedule (§ 31) of the amendment.

3. In support of his position he cites State v. Cuezze, 249 S.W.2d 373 (Mo.1952); State v. Harrington, 435 S.W.2d 318 (Mo.1968); State v. Bordeaux, 337 S.W.2d 47 (Mo.1960); State v. Tate, 416 S.W.2d 103 (Mo.1967); State v. Young, 425 S.W.2d 177 (Mo.1968); Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); United States v. Nygard, 324 F.Supp. 863 (D.C.Mo.1971), and 5 Am.Jur.2d Arrest, § 40, p. 731.

cers constituted a justifiable investigatory "stop" and a limited protective "frisk" for a weapon not in violation of fourth amendment rights as held by the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), and also not in violation of Mo.Const. Art. I, § 15, proscribing unreasonable searches and seizures; that, therefore, the fruits of such "search" were admissible and properly were not suppressed.

Evidence on this issue at the pre-trial hearing on defendant's motion to suppress and that later presented to the jury is essentially the same.

On the night of December 4, 1969, at about 10 o'clock, defendant was in a Velvet Freeze Ice Cream Store to purchase a package of ice cream to take out. The store, well lighted, is located on the west side of DeBaliviere at the intersection of that street with Pershing, a known high-crime area. Officers Harvey Grannemann and Bennie Green of the St. Louis Police Department were at this hour traveling south on DeBaliviere at about 10 or 15 m. p.h. Officer Grannemann was in the front seat on the passenger's side looking out the window toward the west. As they drove past the Velvet Freeze store, Officer Grannemann saw a man, later identified as defendant, leaning over the counter apparently waiting for his purchase. The officer testified that the man had on a three-quarter length light-weight overcoat; that in the back of the coat on the left side at about waist level there was a "bulge [which] protruded up * * * in such a way that it appeared [to him] to be a gun"; that he told Officer Green to turn the car around because he believed this man was carrying a weapon concealed. The police car was turned around and stopped at the west curb in front of the Velvet Freeze store. As the officers got out of their car, defendant came out of the store with his purchase. The officers walked up to defendant, stopped in front of him, and Officer Grannemann asked him his name. Defendant hesitated and slowed, but did not stop, and uttered an obscenity directed at both officers which strongly implied that he had no intention of answering the question or otherwise cooperating. When this happened, Officer Grannemann reached around to defendant's back, touched the bulge area on the outside of the coat, definitely identified it by sense of feel as being caused by a gun, and told his partner, Officer Green, that defendant did in fact have a gun. Defendant shoved Grannemann back, and in that same instant Officer Green reached up under defendant's coat and grabbed the revolver later introduced in evidence. It was not until after this occurrence that defendant was placed under arrest. Officer Green's testimony is essentially the same as that of Grannemann, except that he did not ever see the bulge because he was not where he could see it until he removed the gun from defendant's pocket.

These officers and other witnesses testified that there was nothing unusual about the appearance or activities of defendant and that he was acting in a peaceful manner while in the store. One witness testified that he followed defendant into the store, through the line for customers, and out the door, and did not at any time see a "bulge" in the back of his coat.

The arrest of defendant did not occur until after the described search and removal of the weapon from his person, so the "search and seizure" in this case may not be said to be based upon or incident to a lawful arrest. If this intrusion upon the person of defendant is justifiable at all, it cannot be for the reason there was at that time probable cause for arrest, because the officers did not then have that "* * * precise level of information necessary for probable cause to arrest * * *." Adams v. Williams, supra, 407 U.S. at 145, 92 S.Ct. at 1923.

In Terry v. Ohio, supra, involving a conviction of carrying a concealed weapon,

the Supreme Court of the United States held that even though there is not probable cause to make an arrest, a police officer may in appropriate circumstances and in an appropriate manner stop a person for purposes of investigating possible criminal behavior. 392 U.S. at 22, 88 S.Ct. 1868. In Adams v. Williams, supra, decided four years after *Terry*, the court said at 407 U. S. p. 146, 92 S.Ct. at 1923: "The Court recognized in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons. 392 U.S., at 24, 88 S.Ct. [1868], at 1881. The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose."

█ Applying these principles to our case, we hold the officers acted reasonably and justifiably in pursuing their investigation of whether defendant was violating the law in their presence by carrying a dangerous weapon concealed on his person and in Officer Grannemann's very limited search of defendant's person for their protection. The officers were investigating at night in a high-crime area the activity of a person whom Officer Grannemann, by reason of his experience and sense of sight, reasonably believed to be violating the law at the time. When this person, by his action and words, demonstrated that he would not stop and would not identify himself for the officers, the gun Officer Grannemann believed he was carrying became an even greater threat. Under these circumstances, Grannemann's action in reaching directly to the area where he believed a gun to be hidden, patting the outside clothing and thus by sense of feel definitely identifying the bulge as a gun, and Officer Green's removal thereof, was a limited intrusion designed to assure the officers' safety. We conclude and hold this was a reasonable search and seizure and therefore not proscribed by Mo.Const. Art. I, § 15, or the fourth amendment. The loaded gun and the officers' testimony were therefore admissible and the court did not err in overruling the motion to suppress. Terry v. Ohio, supra; Adams v. Williams, supra.

Another point briefed by defendant is that the court erred in overruling his several motions to dismiss or suppress the indictment returned by a grand jury for the reasons: (1) the number of blacks, poor, and unskilled laborers on the grand jury was disproportionate to the number of such persons in the whole population of St. Louis; and (2) the state was collaterally estopped from prosecuting this case since he had been previously acquitted of the charge of assault with intent to kill Officer Green with malice aforethought, which charge arose out of events occurring immediately after the "stop and frisk," all of which, defendant says, are "part of a single transaction * * * the issues [of which are] intertwined."

█ As to reason (1) for dismissing the indictment, we note that the state filed and the case actually went to trial on an information which had been substituted for the indictment more than two months before the trial began. Assuming, without deciding, that the court erred in overruling the motion to dismiss the indictment for the reasons stated, this would not contaminate or render ineffective the information under which defendant went to trial without objection. State v. Green, 305 S.W.2d 863,

868 (Mo.1957); Rule 24.02.[4] Defendant does not contend that it would, nor does he make any attack on the substitute information. The information did not charge any additional or different offense and no rights of defendant were prejudiced.

As to reason (2) for quashing the indictment, the facts on which the charge of assault with intent to kill with malice is based are, in substance, that after defendant had shoved Officer Grannemann back and Officer Green had grabbed the revolver from defendant's pocket, defendant struck at Officer Grannemann and a fight started involving the three men. During this struggle defendant grabbed Officer Grannemann's revolver, broke loose from the officers, ran a few feet, turned, and fired a shot at Officer Green but missed. As indicated, trial of the assault case before a jury resulted in an acquittal and defendant now contends that by reason of that result the state is collaterally estopped from prosecuting the charge of carrying a concealed weapon. Because of its nature and importance we will consider the point the same as though it had been raised by a motion to quash the information which had been substituted for the indictment.

Defendant relies heavily on Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) in which the United States Supreme Court held that the doctrine of collateral estoppel, an established rule of federal criminal law, is a part of the fifth amendment's guarantee against double jeopardy and applicable to the states. The *Ashe* case involved the prosecution of a defendant for the armed robbery of one victim in a single, multi-victim, poker game robbery after he had been acquitted on a charge of robbing another victim by a verdict which meant the jury had concluded that he was elsewhere at the time and, therefore, not one of the robbers.

The court said in that case that collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." 397 U.S. at 443, 90 S.Ct. at 1194. The test for application of the doctrine requires a determination "whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration" (397 U.S. at 444, 90 S.Ct. at 1194) and, necessarily, an examination of the record in the prior case. At the first robbery trial of the defendant Ashe, "the single rationally conceivable issue in dispute before the jury was whether [Ashe] had been one of the robbers." 397 U.S. at 445, 90 S.Ct. at 1195.

Defendant argues that at his prior trial for assault upon Officer Green with malice, the only issue in dispute was whether the assault was with malice or intent and "the only evidence * * * which would substantiate a finding of malice and intent was that of the presence of the concealed weapon." The fact that before defendant shot at the officer he had had on his person a concealed weapon which had been taken from him, had no efficacy as proof of the elements of malice or intent in the case of the assault on Officer Green. The issues in the assault case were many more than whether that alleged offense was with malice. The state was not collaterally estopped from prosecuting this case.

Defendant briefs two additional points related to his position that the trial court should have sustained his motion to dismiss the indictment. They are that the court erred (1) in overruling his motion for appointment of social researchers and statisticians as experts to aid him at state expense in collecting and preparing statistics and evidence "on the makeup of the population and the grand jury" for presentation to the court in support of his motion to dismiss the indictment on the ground it was returned by an improperly impaneled

---

4. References to rules are to Missouri Supreme Court Rules and V.A.M.R.

grand jury due to discrimination against Negroes; and (2) in quashing his subpoena duces tecum directed to the city assessor for production of records of 1969 tax assessments of all persons on the grand jury list that year which he desired to use as evidence in support of his motion to dismiss the indictment on the ground it was returned by an improperly impaneled grand jury due to discrimination against poor people. We need not consider these points, other than to note that they have been raised, because defendant could not have been prejudiced by the court's rulings on these matters since the grand jury's indictment became functus officio when the state substituted for it the information under which defendant was tried, and defendant does not attack the information.

Defendant next contends that the court erred in admitting, over his objection, evidence of his prior conviction on a plea of guilty to stealing, because he was indigent and was denied the appointment of counsel at the time of his plea to that charge in violation of his rights under the fourteenth amendment as construed in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). He asserts that for these reasons the sentence imposed by the court in this case under the Habitual Criminal Act (§ 556.280) was not authorized. In support of his position he cites Burgett v. Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L. Ed.2d 319 (1967), in which the Supreme Court of the United States held, in substance, that a prior conviction obtained without counsel is not admissible in evidence for purposes of increasing sentence under a state law. We note at this point that our Habitual Criminal Act is not directed toward and does not require an increase in the sentence to be imposed on a second offender; it merely authorizes the court, instead of the jury, to fix the punishment. We note, too, that in this case the court fixed the punishment at the minimum authorized by law.

At a hearing outside the presence of the jury, the state offered and the court admitted in evidence records showing that in April, 1968, in Callaway county, defendant, upon his plea of guilty to a charge of stealing, was sentenced to imprisonment for two years, and was thereafter imprisoned in accordance with that conviction and sentence. As stated in defendant's brief, this record also shows his "waiver of right to counsel." The record to which he refers further shows that the court offered " * * * to appoint counsel to represent the defendant but the defendant voluntarily chooses to appear without counsel and refuses to have counsel appointed for him." Defendant testified at the prior conviction hearing that the court had appointed counsel to represent him quite some time before he pleaded guilty to the stealing charge; that counsel advised with him, but that they " * * * disagreed with the way he was supposed to defend me as far as entering a plea of guilty is concerned * * *," and counsel withdrew; that when he appeared on the day he entered a plea of guilty, the court offered to reappoint this same counsel but did not offer to appoint any other attorney.

It is clear from this record that due regard was given to defendant's right to counsel in the stealing case both before and at the time of the plea of guilty; that he had had the advice of counsel but declined his advice and thereafter voluntarily waived counsel offered by the court at the time of his plea. The court was not required to offer or appoint other counsel who would not have been as familiar with the case as counsel first appointed.

■ The records of the prior stealing conviction were admissible in evidence on the issue of application of the Habitual Criminal Act and the court did not err in admitting those records. State v. Goff, 449 S.W.2d 591, 596[4] (Mo. banc 1970); State v. Grapper, 484 S.W.2d 234, 236[3] (Mo.1972); State v. Hale, 400 S.W.2d 42, 46[4–6] (Mo.1966).

■ Furthermore, "[b]y his failure to take timely advantage of the various remedies provided to set aside the judgment for invalidities not apparent on the face of the

judgment, the defendant has waived any such defects as a ground of objection to the admission of the * * * judgment [in the stealing case] as evidence of a prior conviction." State v. Goff, supra, 449 S.W.2d at 597[5].

■ The next point briefed is that the court erred in overruling his motion for a mistrial requested because of an occurrence in the presence of the jury immediately after oral arguments were closed. After the judge had handed the written instructions to one of the jurors and before the jury could leave the jury box, the sheriff motioned to defendant to come to him to go to the lockup. Defendant did so and was followed closely by two marshals. Counsel for defendant called these facts to the attention of the court and stated further that he could hear the turning of a key and a locking of the cell door and believed that the jury could have seen the same event and heard the same sounds. Defendant argues that escorting him out of the courtroom by the sheriff and marshals in the presence of the jury and the sound of closing and locking the cell door " * * * substantially prejudiced * * * [him] in that this leads the jury to conclude that * * * [he] is already guilty and deserving of punishment."

In support of his position, defendant cites cases [5] involving situations where the accused was in handcuffs in the jury's presence. Defendant asserts that although he was not in handcuffs, the described situation was as prejudicial to his rights as was that of the accused in the cases on which he relies. The trial court did not agree with the logic of defendant's conclusions or that these events prejudiced defendant if the jury saw and heard them. Nor do we. The trial court obviously had the view that no jury of reasonable and prudent men would fail to understand that the officers were performing their simple duty of securing the custody of the accused as required of them pending the outcome

of the trial, or that if the jury saw and heard these events, such would persuade them that he is guilty.

The record shows that the trial judge had information (supported by the record of proceedings in the assault case filed in this case) of conduct of defendant in the prior case which caused the judge to believe that it would be best that he have the sheriff take defendant from the courtroom at that time rather than during the confusion of a recess which would follow immediately after the jury retired to deliberate.

■ The granting of a mistrial is a drastic remedy, to be exercised only in those circumstances in which no action short of a mistrial would remove the prejudice claimed. "The trial court observes first hand what occurs [in his courtroom] and has considerable discretion in deciding whether a mistrial is warranted. Only if an appellate court finds such discretion to have been abused should a case be reversed for failure to declare a mistrial." State v. Beal, 470 S.W.2d 509, 516[9] (Mo. banc 1971). We do not find an abuse of discretion in this case.

■ In his last point defendant asserts that the court erred in giving instruction 3, because it " * * * failed to adequately advise the jury that the defendant must have willfully and intentionally carried a weapon so it could not be seen." He also claims in this point error in failing to give his instruction B which he says would have corrected the inadequacy of instruction 3. Defendant's assignments of error in his motion for new trial, insofar as related to this point, are: (1) that all instructions given by the court "* * * were misleading and contrary to the evidence; contrary to law, and taken as a whole had the effect of directing the jury to return a verdict against defendant"; and (2) error "* * * in refusing defendant's proferred instruction B." These assignments fail to state with particularity any specific

5. State v. Yates, 442 S.W.2d 21 (Mo.1969); State v. Boyd, 256 S.W.2d 765 (Mo.banc 1953); State v. Rice, 347 Mo. 812, 149 S.W.2d 347 (1941).

**30**

grounds or reasons why the giving and refusing of these instructions was error, were wholly inadequate to present any error to the trial court much less the error now claimed, and preserved nothing for review on appeal. Rule 27.20(a).

 Moreover, there is no merit to the objection now made to instruction 3. The instruction is not objectionable for the reason asserted. It informed the jury "* * * that to conceal a weapon means something more than carrying it or the mere fact of having it where it may not be seen. It implies an assent of the mind and a purpose to carry it so that it may not be seen * * *." Further, the instruction informed the jury that if it found that defendant did not intend to carry the pistol concealed he should be found not guilty. Instruction B was directed to the same subject, but was not clear and was misleading.

The judgment is affirmed.

MORGAN, J., and DONNELLY, C. J., concur.

FINCH, J., not sitting.