STATE of Missouri, Respondent,

v.

Eric HUNTER, Appellant.

No. WD 41831.

Missouri Court of Appeals,
Western District.

Jan. 30, 1990.

Nancy A. McKerrow, Columbia, for appellant.

William L. Webster, Atty. Gen., Andrea K. Spillars, Asst. Atty. Gen., Jefferson City, for respondent.

Before NUGENT, C.J., and FENNER, J., and WASSERSTROM, Senior Judge.

FENNER, Judge.

Appellant, Eric J. Hunter, appeals his conviction after bench trial, for possession of cocaine in violation of § 195.020, RSMo 1986. Appellant was sentenced to three years' imprisonment and granted probation for a term of four years.

Prior to trial appellant's motion to suppress evidence was taken up by the court and denied. Thereafter, the cause proceeded to trial, evidence was heard and appellant was found guilty of the charge. Ap-

pellant argues that the trial court erred in overruling his motion to suppress evidence.

■ On appeal from denial of a motion to suppress evidence, all evidence bearing on the question presented, both at the motion hearing and at trial, may be considered. *Settle v. State*, 679 S.W.2d 310, 313 (Mo.App.1984) *cert. denied*, 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985). In reviewing a motion to suppress an appellate court is free to disregard contrary evidence and inferences and' the trial court's ruling will be affirmed if there is sufficient evidence in the record to support its finding. *State v. Singer*, 719 S.W.2d 818, 821 (Mo.App.1986).

In the case at bar Police Officer Mayer testified that on the night in question, at approximately 9:30 p.m., he was on patrol looking for a subject who was reportedly threatening suicide and possibly had a weapon. Officer Mayer was in the area where the individual threatening suicide was reported to be. Pursuant to his search, Officer Mayer came upon a vehicle parked at the entrance to a private drive. As Officer Mayer approached the vehicle it appeared to be unoccupied. Officer Mayer drove up and stopped behind the vehicle to obtain a better view and determine whether the suicide subject might be in the vehicle.

Officer Mayer stopped behind the vehicle as a safety consideration and at that time he did not know whether it was occupied. Officer Mayer turned on his "take-down" lights to see if there was anyone present in the car[1]. At that point, he observed two occupants in what he described as a "flurry of movement." Initially, both the passenger and the driver had been "slouched down". However, immediately after the light was shown, the driver lunged toward the passenger and then returned to an upright position. Then the passenger ducked completely out of view before returning to an upright position. Officer Mayer was of the opinion that appellant, the passenger, had placed something under his seat and that it was possibly a weapon. After ob-

serving this activity within the vehicle, Officer Mayer out of concern for his safety called for backup and "ran" the license on the vehicle. Officer Mayer testified that it was a standard departmental policy to call for at least one other backup officer when there was more than one subject in a vehicle.

Officer Mayer then approached the vehicle and from outside the vehicle, on the driver's side, advised the subjects to stay where they were until he had some help with him. Officer Mayer kept the subjects under observation until a backup officer arrived about one and one-half minutes later. Officer Mayer informed the backup officer that it had appeared to him that the passenger had stuffed something out of view under the seat in an effort to conceal it.

Officer Mayer and his backup officer had the subjects get out of the vehicle and produce identification. While Officer Mayer was talking to the driver, the backup officer informed him that upon looking inside the car he saw part of a brown paper sack sticking out from underneath the front passenger seat. Officer Mayer then retrieved the sack to determine if it contained a weapon. Upon opening the sack Officer Mayer discovered a glass water pipe with two tubes in it and a cellophane bag with a white powdery substance that was determined to be cocaine.

Appellant's sole argument on appeal is that his right to be free from unreasonable search and seizure as guaranteed by the Fourth Amendment of the United States Constitution and Article I, Section 15 of the Missouri Constitution was violated. Appellant argues that at the moment Officer Mayer pulled up behind the car in which he was a passenger and turned on his "take-down" lights, that he had been "seized" unlawfully and that the ensuing search was unreasonable.

■ In order to justify a seizure which rises to the level of an arrest there must be

---

1. Take-down lights were defined as white lights located on the overhead bar on the roof of the squad car.

probable cause. *State v. Blair*, 691 S.W.2d 259 (Mo. banc 1985) *cert. dismissed*, 480 U.S. 698, 107 S.Ct. 1596, 94 L.Ed.2d 678 (1987). However, not every display of authority amounting to a seizure is necessarily an arrest. *State v. Crum*, 536 S.W.2d 507, 509 (Mo.App.1976). In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that seizures less intrusive than traditional arrests may be reasonable pursuant to the Fourth Amendment. In some circumstances, an officer may make an investigative stop and detain a suspect briefly for questioning although he does not have "probable cause" to believe that the suspect is involved in criminal activity, as is required for a traditional arrest. However, the officer is required to have a reasonable suspicion, based upon objective facts, that the individual is involved in criminal activity. *Brown v. Texas*, 443 U.S. 47, 51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979). Reasonable suspicion exists when an officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant an intrusion. *State v. Cross*, 757 S.W.2d 613, 614 (Mo.App.1988).

Previous Missouri cases have found that similar or less incriminating conduct, than that in the case at bar, constitutes reasonable suspicion warranting an investigative stop. In *State v. Brown*, 762 S.W.2d 471 (Mo.App.1988), the court found that there was reasonable suspicion that a criminal activity had taken place or was likely to take place, where two experienced officers, patrolling a high crime area, noticed three men standing in front of a vacant building, one of whom threw a bottle against the porch as the police turned the corner.

Also, in *State v. McQuinn*, 761 S.W.2d 668 (Mo.App.1988), reasonable suspicion was found present where police officers observed McQuinn looking into the front window of a frequently burglarized store late at night. The subsequent search and seizure of a small handgun was found valid within the parameters of *Terry*. *Id.* at 670.

Finally, in *State v. Barks*, 711 S.W.2d 892, 898 (Mo.App.1986), the court found reasonable grounds for stopping Barks where Barks had made a quick inspection of his vehicle and an equally speedy departure upon observing the police car.

In the case at bar, when Officer Mayer stopped behind the vehicle in question he was on patrol looking for a subject who was reportedly threatening suicide and possibly had a weapon. The car appeared to be out of place and the officer wanted to determine if it was connected to the suicide subject who was reportedly in the area. An officer can investigate activity that is consistent with both innocent behavior and potential criminal activity by asking nonintimidating questions. *Hemsley v. U.S.*, 547 A.2d 132, 135 (D.C.App.1988).

Officer Mayer testified that at the time he pulled up behind the parked vehicle he didn't know if it was occupied. The mere fact that Officer Mayer pulled up behind what appeared to be an unoccupied vehicle did not amount to a seizure of appellant, who was later determined to be an occupant of the vehicle. Once Officer Mayer turned on his "take-down" lights to see inside the vehicle, the activity he observed established a reasonable suspicion on his part that appellant was involved in criminal activity and caused Officer Mayer to be concerned for his safety. At this point Officer Mayer was justified in effecting an investigatory stop.

Officer Mayer articulated facts, which taken together with the rational inferences from those facts, reasonably warranted his undertaking an investigatory stop. The car appeared to be out of place, the occupants were out of sight when the officer first approached the vehicle and there was a flurry of activity when the officer turned on his "take-down" lights. Specifically, the driver lunged toward appellant, who was the passenger, whereupon appellant ducked out of sight in an apparent effort to hide something under the seat. Both occupants then returned to an upright position. Officer Mayer was of the opinion that appellant had possibly placed a weapon under his seat and had reason to be concerned for his safety.

Having established the validity of the stop, the propriety of the ensuing search must next be addressed. In *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3480, 77 L.Ed.2d 1201 (1983), the court held that after an investigatory stop, the officer may conduct a search of those areas of the passenger compartment of the automobile in which a weapon may be placed or hidden "if the officer possesses a reasonable belief based on specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant the officer in believing that the suspect is dangerous and the suspect may gain immediate control of weapons." The issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger. *Id.; State v. Cross*, 757 S.W.2d at 615.

The activity inside the vehicle observed by Officer Mayer would warrant a reasonably prudent man in the belief that his safety was in danger and the search was therefore valid.

The judgment of the trial court is affirmed.

All concur.

Thomas T. Wood and Larry G. Chipman, Independence, for appellants.