STATE of Missouri, Plaintiff–Appellant,

v.

Cornelius TAYLOR, Defendant–Respondent.

No. 72756.

Missouri Court of Appeals,
Eastern District,
Division Four.

Feb. 10, 1998.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 20, 1998.

Application for Transfer Denied
May 26, 1998.

258

Patrick M. Kiernan, Asst. Cir. Atty., St. Louis, for plaintiff-appellant.

Nancy L. Vincent, Asst. Public Defender, St. Louis, for defendant-respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

This is an interlocutory appeal by the State, pursuant to Section 547.200.1, RSMo 1994,[1] from an order of the trial court suppressing evidence. The order was entered in the underlying criminal case in which Defendant, Cornelius Taylor, is charged with one count of Unlawful Use of a Weapon—Carrying a Concealed Weapon, in violation of Section 571.030.1(1). We reverse the court's grant of the suppression motion and remand.

At the hearing on Defendant's motion to suppress, the State presented Police Officer John Winter as its sole witness. Defendant did not offer any evidence. The parties do not dispute the following facts: On March 27, 1996 at approximately 1 a.m., Officer John Winter and two other officers were on patrol

1. All statutory references are to RSMo 1994, unless otherwise noted.

in a marked police vehicle in the area of Dr. Martin Luther King and Marcus Streets in the City of St. Louis. An unidentified black female, whom Officer Winter perceived to be visibly shaken, approached the officers and told them that she was in the 1500 block of Marcus walking towards a store when she noticed a person also walking towards the store. She then entered the store and heard the person yell something to her to the effect of "Get back out here!" She described the person as a black male wearing a black skull-cap, a full length black coat, and having his right hand in his right front coat pocket. She told Officer Winter that she was afraid the man was going to rob her. She said she last saw the man walking south on Marcus. She also told Officer Winter that she did not want to get involved.

Officer Winter proceeded south on Marcus. He then reached Page and proceeded west on Page towards Walton. At the intersection of Page and Walton, three blocks from the area Officer Winter encountered the unidentified woman, he observed an individual matching the description given by the woman, wearing a dark skullcap and dark, full length coat, walking south on Walton. Officer Winter stated that the person appeared to approach the passenger window of a parked red car until the man saw Officer Winter's police car approach at which time he walked away from the parked car and walked towards the front of a nearby building, 1224 Walton, which Defendant gave as his address.

At this time, the officers got out of the car and approached Defendant. Officer Winter observed that Defendant had his right hand in his front right coat pocket. Officer Winter ordered Defendant to remove his hand from his pocket but Defendant failed to comply. Officer Winter ordered him a second time at which point Officer Winter grabbed Defendant's pocket and felt what he believed to be a gun which Officer Winter then removed along with Defendant's hand. The gun was a .38 revolver, loaded with five live rounds. While in Defendant's pocket, the gun was fully concealed. Officer Winter testified that from the woman's description, her fear, and

his own experiences, he wanted to see Defendant's hands and make sure Defendant was not concealing anything.

Officer Winter then placed Defendant under arrest and advised him of his *Miranda*[2] rights. Defendant gave Officer Winter the alias "Jessie Montgomery." It was not until they were at police headquarters that Officer Winter learned Defendant's real name was Cornelius Taylor. The gun was test fired and found operable. The gun, skullcap and long coat were all seized as evidence.

Defendant filed a motion to suppress the evidence which the court sustained on June 2, 1996. The order sustaining Defendant's motion read:

> Following hearing, the Defendant's motion to suppress evidence sustained.
>
> Evidence produced at hearing by the State and Motion to Suppress sustained because of unreasonable search and seizure.
>
> The circuit attorney has ten days to challenge this ruling.
>
> This ruling shall be considered a final ruling for purposes of a writ or appeal.

On June 10, the State filed a Motion for Leave to File Notice of Appeal of Interlocutory Order Out of Time pursuant to Rule 30.03 of the Missouri Rules of Criminal Procedure. This court denied the State's motion on June 18, stating that: "Rule 30.03 only grants the state the right to file a motion to file a late Notice of Appeal from a final judgment," not from an interlocutory order.

On June 20, the circuit court vacated its previous order and issued a second order which stated:

> Having been made aware by the State's Motion for Leave to File Notice of Appeal Out of Time that the Court's Order of June 2, 1997 included language that may have been interpreted to allow the State 10 days to file a Motion to Reconsider to challenge the Court's order, the Court hereby vacates and corrects that error by ordering the following:
>
> 1. The Court's order of June 2nd, 1997 is hereby vacated.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Upon reconsideration, the Defendant's Motion to Suppress is hereby sustained as of the date of this order.

3. The State, pursuant to Section 547.200.4 R.S.Mo., has five days from the date of this order to appeal this interlocutory order.

Pursuant to this order, the State filed a second notice of appeal within five days from the order pursuant to Section 547.200.

█ Defendant urges this appeal must be dismissed because the State's initial failure to file a timely appeal deprives this court of jurisdiction. Moreover, Defendant argues the circuit court's subsequent order on June 20 does not cure the State's failure to file a timely appeal. We disagree.

█ Generally, the State "cannot appeal a judgment for the accused, whether it is upon a verdict of acquittal or upon a determination of a question of law, unless a right of appeal is unequivocally conferred by statute." *State v. Stein*, 876 S.W.2d 623, 624 (Mo.App. E.D. 1994). Section 547.200 allows the prosecuting or circuit attorney to appeal an order suppressing evidence by filing such notice of appeal "in the appropriate court within five days of the entry of the order of the trial court." Section 547.200(4); *State v. Bibb*, 922 S.W.2d 798, 801 (Mo.App. E.D.1996). This five-day filing period mandated by Section 547.200 will be "strictly enforced absent some rule by the supreme court allowing for late filing." *Bibb*, 922 S.W.2d at 801–02.

Pursuant to this rule, this court denied the State's request to file a late notice of appeal on June 18, 1997. In response to this denial, the circuit court, on June 20, reissued an order vacating the June 2 order and again sustained Defendant's Motion to Suppress.

█ A circuit court's ruling on a motion to suppress is interlocutory. Interlocutory orders are "subject to reconsideration by the trial court at any time prior to the verdict." *State v. Beaver*, 697 S.W.2d 573, 574 (Mo. App. E.D.1985). Here, the court expressly vacated the order of June 2 and entered a new order on June 20, thereby beginning anew the time within which the State had to appeal. This conclusion is in accord with this court's ruling in *Beaver* in which we held the

State may not avoid the five-day limitation mandated in Section 547.200 by filing a motion to reconsider. *Beaver*, 697 S.W.2d at 574. Allowing the time for appeal to start over each time the State filed a motion to reconsider would "render meaningless the [statutory] time frame established." *Id.* Here, however, the court did more than reconsider the motion to suppress, it expressly vacated its previous order and entered a new order, thereby beginning anew the time within which the State had to appeal. Accordingly, we find the State's appeal to this court was timely.

█ In its sole point on appeal, the State asserts that the trial court erred in sustaining Defendant's Motion to Suppress Evidence because the evidence was seized pursuant to a lawful investigative stop, before which the officer had confirmed Defendant matched a physical description given by an anonymous citizen and had a reasonable suspicion that the Defendant was involved in criminal activity.

█ Once a defendant files a motion to suppress, "the state bears the burden of going forward with the evidence and the risk of nonpersuasion to show by a preponderance of the evidence that the motion should be overruled." *State v. Blackman*, 875 S.W.2d 122, 135 (Mo.App. E.D.1994) (*citing* Section 542.296.6 RSMo 1986); *State v. Stevens*, 845 S.W.2d 124, 128 (Mo.App. E.D.1993). When we review a trial court's order suppressing evidence, we consider the facts and reasonable inferences arising therefrom favorably to the order challenged on appeal. *Bibb*, 922 S.W.2d at 802 (Mo.App. E.D.1996). If neither party disputes the facts, whether the trial court was correct in its ruling must be "measured solely by whether the evidence is sufficient to sustain the findings." *State v. Franklin*, 841 S.W.2d 639, 641 (Mo.1992). While we "may not substitute our discretion for that of the trial court, and may not reverse even if we believe we would have weighed the evidence differently," we must "consider the ruling in light of the proper application of the precepts of the Fourth Amendment." *Stevens*, 845 S.W.2d at 128

(Mo.App. E.D.1993) (internal citations omitted).

■ An investigative stop does not offend the Fourth Amendment when a law enforcement officer is able to point to specific and articulable facts which, taken with rational inference from those facts, create a reasonable suspicion that criminal activity is afoot. *State v. Rushing*, 935 S.W.2d 30, 32 (Mo.1996) *cert. denied* —— U.S. ——, 117 S.Ct. 1713, 137 L.Ed.2d 837. An investigative stop is lawful if, upon the consideration of the totality of the circumstances, "a 'particularized suspicion' results that the person stopped is engaged in wrongdoing." *State v. Preston*, 861 S.W.2d 627, 630 (Mo.App. E.D. 1993). In determining whether such a stop is lawful, we consider "the inferences which would be drawn by a trained police officer and the evidence is to be viewed as seen by one versed in law enforcement." *Id.; see State v. Lanear*, 805 S.W.2d 713, 716–17 (Mo. App.1991) ("In judging on-the-street encounters, it is proper 'to take into account a police officer's trained instinctive judgment operating on a multitude of small gestures and actions impossible to reconstruct.' "). The law does not require, however, that the circumstances "exclude the possibility of innocent behavior." *State v. Fernandez*, 691 S.W.2d 267, 269 (Mo.1985).

■ "Once a valid stop has been made, police may pat a suspect's outer clothing if they have a reasonable, particularized suspicion that the suspect is armed." *Rushing*, 935 S.W.2d at 32. This limited search is done not " 'to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence.' " *Id.*

Upon review of the record in this case, we find there was insufficient evidence from which the court could have concluded the investigative stop was unlawful. The facts of this case are similar to those in *State v. Johnson*, 504 S.W.2d 23 (Mo.1973). In *Johnson*, our Supreme Court found that a police officer who noticed a man in an ice cream store with a bulge in his pocket which appeared to the officer to be from a gun, acted reasonably in the following series of events: in walking up to the defendant and asking him his name; that upon defendant walking away and not answering the officer, the officer reached out and felt the bulge at the defendant's side, believed it was a gun and grabbed the revolver from the defendant's person. *Id.* While prior to the investigative stop there had been nothing else unusual about the defendant's appearance or activities, the Supreme Court found it enough that the officer was "investigating at night in a high-crime area the activity of a person whom [the officer], by reason of his experience and sense of sight, reasonably believed to be violating the law at the time." *Id.* at 26.

Similarly here, we cannot say it was unreasonable for Officer Winter to suspect Defendant was concealing a weapon in light of the totality of the following circumstances: it was late at night; Defendant initially walked away from Officer Winter when approached by him; Defendant would not remove his hand from his pocket when ordered to by Officer Winter; and Defendant matched the description that had been given minutes ago by the unidentified woman of a black man wearing a dark, long coat, black skullcap and having his right hand in his front right-hand pocket. Furthermore, like the officer in *Johnson*, Officer Winter acted in light of his experience in law enforcement in forming his opinion that Defendant might be concealing something in his front right-hand pocket that could put his safety, or the safety of others, at risk. We conclude Officer Winter conducted a lawful investigative stop. Therefore, we reverse the circuit court's order suppressing the evidence and remand the cause for further proceedings.

SIMON and HOFF, JJ., concur.