STATE of Missouri, Appellant,

v.

Marc A. McFALL, Respondent.

No. WD 54945.

Missouri Court of Appeals,
Western District.

April 20, 1999.

Dawn M. Parsons, Asst. Pros. Atty., Kansas City, for appellant.

Vince Esposito, Kansas City, for respondent.

Before BRECKENRIDGE, C.J., ELLIS and HANNA, JJ.

PATRICIA BRECKENRIDGE, Chief Judge.

The State appeals from the trial court's order sustaining defendant Marc McFall's motion to suppress. The State contends that the police had reasonable suspicion to conduct a protective search for weapons of Mr. McFall's car after observing him make furtive movements during a routine traffic stop. Deferring to the trial court's credibility determinations and considering all of the facts and inferences in the light most favorable to the trial court's order, this court finds that the trial court's order suppressing the seized evidence is not clearly erroneous. Therefore, the order of the trial court suppressing the seized evidence is affirmed.

**Factual and Procedural Background**

On April 30, 1997, Officers Kurtis Schmidt and Stuart Carpenter were on tactical response patrol in Kansas City, Missouri. At around 4:30 p.m. on that day, as Mr. McFall left his girlfriend's residence, he observed the officers in a parked patrol car a block and a half down the street from his girlfriend's residence. Mr. McFall got into his vehicle and started driving down the street. By the time Mr. McFall got to the corner, the police officers had caught up to his vehicle and were following behind him. The officers observed Mr. McFall make a turn at the corner without signaling. The officers then activated their lights and siren, signaling for Mr. McFall to stop. Mr. McFall pulled his vehicle over immediately.

At the suppression hearing, Officer Schmidt testified that after Mr. McFall pulled over, the officers observed him glance over each of his shoulders a couple of times, lean back in the driver's seat as if he were removing something from his pants, and then lean forward, almost out of view, as if he were putting something under the seat. Mr. McFall testified, however, that after he pulled over, he did not take anything out of his waistband, he did not place anything under the seat, and he did not lean forward and put his hands under the seat. He testified that about five minutes passed from the time of the stop until the officers approached the car, with one on each side, and removed Mr. McFall from the vehicle.

After Mr. McFall exited his vehicle, Officer Carpenter took Mr. McFall to the rear of his car and gave him a quick pat down to ensure he was unarmed. Following the pat down, Officer Schmidt went to the front of the vehicle and searched under the driver's seat, where he testified he had seen Mr. McFall put something. As a result of the search, Officer Schmidt found a clear plastic bag which held numerous small bags containing a white, rock-like substance. The substance was field-tested and the officers determined the substance was cocaine. Mr. McFall was then arrested for possession of narcotics and cited for failing to signal before turning. He was later indicted for trafficking drugs in the second degree and, in an amended information, he was charged as a prior drug offender.

Following the institution of charges against Mr. McFall, he filed a motion to suppress the evidence seized from his car. Mr. McFall alleged that the search violated the Fourth Amendment to the United States Constitution because it was not conducted incident to a custodial arrest, it was not necessary to ensure the officers' safety, and it was not supported by probable cause or reasonable suspicion. In its response, the State argued that the search was a proper protective sweep because Mr.

McFall's motions in the car, subsequent to the lawful stop, gave rise to the officer's reasonable suspicion that Mr. McFall was armed and potentially dangerous. On September 10, 1997, the circuit court of Jackson County conducted a hearing on Mr. McFall's motion to suppress. After taking the matter under advisement, the trial court granted Mr. McFall's motion to suppress on September 11, 1997.

Subsequently, the State filed a timely interlocutory appeal to this court pursuant to § 547.200.4, RSMo 1994, and Missouri Supreme Court Rules 21.01 and 30.02.[1]

### Standard of Review

■ A trial court's ruling on a motion to suppress may be reversed only if it is clearly erroneous. *State v. Slavin*, 944 S.W.2d 314, 317 (Mo.App.1997). Appellate review is limited to a determination of whether the trial court's ruling is supported by sufficient evidence from the record as a whole. *Id.* In reviewing a trial court's order on a motion to suppress, this court considers all facts and reasonable inferences in the light most favorable to the challenged order. *State v. Taylor*, 965 S.W.2d 257, 260 (Mo.App.1998). The appellate court must defer to the trial court's determination as to the credibility of witnesses. *State v. Schieber*, 760 S.W.2d 557, 559 (Mo.App.1988). This court may not substitute its discretion for that of the trial court when reviewing an order suppressing evidence. *Taylor*, 965 S.W.2d at 260. Nonetheless, "we must consider the ruling

in light of the proper application of the precepts of the Fourth Amendment." *Id.* (internal quotations omitted). The ultimate issue of whether the Fourth Amendment was violated is a question of law which this court reviews *de novo*. *Slavin*, 944 S.W.2d at 317.

### No Reasonable Suspicion to Search

■ On appeal, the State argues that the trial court erred in sustaining Mr. McFall's motion to suppress because the evidence was sufficient to conclude that the search was "supported by law" since the officer had a reasonable suspicion to conduct a protective sweep of the automobile.[2] Mr. McFall counters that the search was not supported by reasonable suspicion because he made no furtive gestures during the stop. He reasons that because the trial court sustained his motion to suppress and on appeal, the evidence must be viewed in the light most favorable to the ruling, this court must review this case assuming the trial court believed his testimony regarding the stop. He maintains that this court is bound by the facts as he presented them at trial.

■ The standard for evaluating the constitutionality of a protective search of an automobile, incident to a stop for a traffic violation, is set out in *Michigan v. Long*, 463 U.S. 1032, 1049–50, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983).[3] In *Long*, the United States Supreme Court

1. Mr. McFall argues the State did not file a timely appeal. The order granting Mr. McFall's motion to suppress was entered on September 11, 1997. The State's notice of appeal was filed on September 18, 1997. Section 547.200, RSMo 1994 requires the State's notice of appeal be made within five days following the trial court's ruling on the motion to suppress. The State complied with the timeliness requirement because Rule 20.01 provides that for time periods less than seven days, Saturday, Sunday, and legal holidays shall be excluded from the time computation. Excluding Saturday and Sunday, September 13 and 14, September 18 was the fifth day following the entry of the order to suppress. Because the State filed its notice of

appeal on September 18, the State's notice of appeal was timely.

2. The State does not argue that the search was justified by probable cause, which is necessary for the police to search a vehicle for contraband. Therefore, this court will not address whether these facts would give rise to probable cause.

3. Mr. McFall does not argue the constitutionality of the initial stop. Officers are authorized to stop drivers to issue a traffic summons. *See State v. Burkhardt*, 795 S.W.2d 399, 405 (Mo. banc 1990).

examined whether and when an officer may search a vehicle stopped for a routine traffic violation for weapons to protect the safety of the officer. *Id.* Likening the roadside stop of a vehicle to a *Terry*[4] investigative stop of a person, the Court found that concerns for officers' safety in both situations justified protective searches for weapons when the police suspected that the subject may be armed and dangerous. *Id.* The Court explained, "A *Terry* search, 'unlike a search without a warrant incident to a lawful arrest, is not justified by any need to prevent the disappearance or destruction of evidence of crime.... The sole justification of the search ... is the protection of the police officer and others nearby.... ' " *Id.* at 1049, 103 S.Ct. at 3481 n. 14 (quoting *Terry,* 392 U.S. at 29, 88 S.Ct. at 1884). This justification holds true even if the suspect is outside of the car during the stop. *Id.* at 1051, 103 S.Ct. at 3482. Although outside of the car and in the brief control of a police officer, a suspect might still be able to "break away from police control and retrieve a weapon from his automobile," or if the suspect is not placed under arrest, "he will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Id.* at 1051–52, 103 S.Ct. at 3482.

■ A *Terry* protective search of an automobile is justified only if the police officer possesses a reasonable belief based on specific and articulable facts, as well as the reasonable inferences from those facts, that his safety or that of others is in danger. *Id.* at 1049–50, 103 S.Ct. at 3481. The issue is whether a reasonably prudent person in similar circumstances would believe that the suspect was dangerous. *Id.* at 1050, 103 S.Ct. at 3481. *See also State v. Kovach,* 839 S.W.2d 303, 310 (Mo.App. 1992) (protective search justified when the facts available to the officer "warrant a man of reasonable caution in the belief that the action taken was appropriate"). For the protective search of a vehicle to be justified in light of the Fourth Amendment, the police must objectively believe that "the suspect is dangerous and the suspect may gain immediate control of weapons." *Long,* 463 U.S. at 1049, 103 S.Ct. at 3481.

■ Many jurisdictions have addressed whether "furtive gestures" by a vehicle's occupants during a traffic stop support a reasonable suspicion that the occupants are armed and potentially dangerous. See 4 WAYNE R. LaFAVE, SEARCH AND SEIZURE, Sec. 9.5(e), at 293 n.247 (3d ed.1996) (collection of federal and state cases finding furtive movements support reasonable suspicion). Generally, movement indicating that a driver is attempting to conceal something in the car is found to support an officer's reasonable suspicion that the driver may have a weapon. See id. In Missouri, a driver's suspicious movements in an automobile have been held to support reasonable suspicion to search for weapons. *State v. Hunter,* 783 S.W.2d 493, 495–96 (Mo.App.1990). In *Hunter,* a protective search was upheld where an officer conducted a protective search after observing activity inside the vehicle, where the driver lunged toward the passenger and then returned to an upright position and the passenger then ducked completely out of view. *Id.* The court held that the activity observed by the officer would warrant a reasonably prudent man to believe that his safety was in danger. *Id.* at 496.

In this case, Officer Schmidt testified that he and Officer Carpenter stopped Mr. McFall for failing to signal before turning. After Mr. McFall pulled over, but before the officers approached his car, Mr. McFall glanced over each of his shoulders a couple of times, leaned back in the driver's seat as if he were removing something from his pants, and then leaned forward as though he were putting something under his seat. Officer Schmidt testified that Mr. McFall's movements in the car made the officers believe that Mr. McFall had

4. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20    L.Ed.2d 889 (1968).

placed a gun or something under the seat. He further testified that, when the officers approached Mr. McFall's vehicle, they immediately removed Mr. McFall from the vehicle for their safety, in the event it was a gun that Mr. McFall had placed under his seat. In this testimony, Officer Schmidt articulated a reasonable suspicion that, based upon Mr. McFall's furtive gestures after the stop, a search for weapons was necessary to protect the officers' safety. Thus, if Officer Schmidt's testimony is taken as true, the search was justified under *Long* and *Hunter.*

■ Pursuant to the standard of review, however, this court must defer to the trial court's credibility determinations and view the evidence in the light most favorable to the trial court's granting of the motion to suppress. *Taylor,* 965 S.W.2d at 260; *Schieber,* 760 S.W.2d at 559. Mr. McFall testified, essentially, that he did not make any furtive gestures after the stop. He testified that after he pulled over, he did not take anything out of his waistband, he did not put anything under the seat, and he did not lean forward and put his hands under the seat. Deferring to the trial court's credibility determinations, this court must disregard Officer Schmidt's testimony and assume that the trial court believed Mr. McFall's account of his actions after the stop. Viewing the evidence in the light most favorable to the trial court's ruling, the trial court did not err in granting the motion to suppress.[5]

Accordingly, the trial court's order suppressing the evidence is affirmed.

HANNA, J., concurs.

ELLIS, J., concurs in a separate opinion.

ELLIS, Judge, concurring.

I concur in the reasoning used, and the result reached, in the majority opinion. However, I respectfully decline the opportunity to join in the majority's *obiter dictum* to the effect that had the trial court believed the state's furtive gestures testimony, then the search *in this case* was legal.

In *Muench v. South Side Nat. Bank,* 251 S.W.2d 1 (Mo.1952), our Supreme Court stated:

'An *obiter dictum,* in the language of the law, is a gratuitous opinion—an individual impertinence—which, whether it be wise or foolish, right or wrong, bindeth none, not even the lips that utter it.' *Hart v. Stribling,* 25 Fla. 433, 435, 6 So. 455. Or as classically expressed by Judge Caskie Collet, it is " 'That useless chatter of judges, indulged in for reasons known only to them, to be printed at public expense.' " *United States v. Certain Land in City of St. Louis,* D.C., 29 F.Supp. 92, loc. cit. 95 [(1939)].

*Muench,* 251 S.W.2d at 6. Under our standard of review, we must disregard Officer Schmidt's "furtive gestures" testimony. In reviewing a trial court's order on a motion to suppress, the facts and all reasonable inferences arising therefrom *"are to be stated favorably to the trial court's order,"* State v. Franklin, 841 S.W.2d 639,

---

**5.** At the close of the motion hearing, the judge made comments that indicate that he may not have ruled upon the credibility of the witnesses because of a misunderstanding of the law permitting protective searches upon the observation of furtive movements. Specifically, the judge stated that he thought the evidence justifying the protective sweep was "extremely thin," and that he was "not sure that there is a reasonable articulable suspicion of any criminal activity, *even given the motions that were described by the police officer."* (emphasis added). Because these comments did not constitute findings of fact, *see Schieber,*

760 S.W.2d at 559, this court does not consider whether the trial court's statements mean it did or did not believe the police officer's testimony. This court merely accepts the facts in the light most favorable to the order sustaining the motion to suppress. However, if the facts recited, based upon the standard of review, do not accurately reflect the trial court's holding, the trial court can rectify this because the trial court's ruling on the motion to suppress evidence is interlocutory. *See State v. Milliorn,* 794 S.W.2d 181, 187 n. 4 (Mo. banc 1990).

641 (Mo. banc 1992) (emphasis added), *and all contrary evidence and inferences must be disregarded. State v. Blair,* 691 S.W.2d 259, 260 (Mo. banc 1985) (emphasis added). Thus, any "what if" speculation about what the result would be "if Officer Schmidt's testimony is taken as true," *Maj. Op.* at 675, is irrelevant to disposition of the instant appeal. "Judicial opinions are meant to resolve legal disputes. Therefore, an appellate court does not decide and should suppress its instructive instincts and not discuss issues which are irrelevant and unimportant to resolution of the legal dispute presented." *Coalition to Preserve Educ. On the Westside v. School Dist. Of Kansas City,* 649 S.W.2d 533, 536 (Mo. App. W.D.1983).

The instant appeal is a poster child for the wisdom of the rule against deciding issues irrelevant to resolution of the pending case. It must be recalled that the undisputed evidence in this case was that the police officers waited approximately five minutes after they stopped Mr. McFall's vehicle until they exited the police car and approached his vehicle. I can see a very significant potential for abuse if law enforcement officers are permitted to use "furtive gestures" by a defendant to justify a search, when those movements are made during a protracted delay, caused by the officers, between the stop of the vehicle and the officers approaching it. It is only reasonable for a driver waiting that long for the officers to approach his car to be looking over his shoulder, becoming anxious and acting nervously. For this reason, if no other, discussion and decision of that issue should be left to a case in which it is presented. Ultimately, however, the saving grace is that *dictum* has no controlling or precedential value.

> The statements . . . are obiter dicta in that they were not essential to the court's decision of the issue before it. Accordingly, the statements are not controlling on this court. "Any reported opinion should be read in the light of the facts of that particular case, and it would be unfair as well as improper 'to give

permanent and controlling effect to casual statements outside the scope of the real inquiry.'"

*Campbell v. Labor and Indus. Relations Com'n,* 907 S.W.2d 246, 251 (Mo.App.W.D. 1995) (Citations omitted).