STATE of Missouri, Plaintiff–Respondent,

v.

Willie George CHILDRESS, Defendant–Appellant.

No. 17503.

Missouri Court of Appeals, Southern District, Division Two.

March 11, 1992.

Motion for Rehearing or Transfer Denied April 6, 1992.

Application to Transfer Denied June 2, 1992.

936 

Donald R. Cooley, Springfield, for defendant-appellant.

William L. Webster, Atty. Gen., Elizabeth L. Ziegler, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

FLANIGAN, Chief Judge.

The trial court, sitting without a jury, found defendant guilty of transportation of cocaine, § 195.025,[1] and sentenced him to 20 years' imprisonment. Defendant appeals.

Defendant does not challenge the sufficiency of the evidence to support the conviction. The offense took place on November 6, 1988, on Interstate 44 in Greene County. Defendant was the driver of a Chevrolet Suburban, a van-type vehicle. A passenger in the Chevrolet was James McCarnes. Defendant was driving at a speed of 68 miles per hour. The speed limit was 55. Trooper Jack McMullin of the Highway Patrol pursued the Chevrolet. Both vehicles stopped on the shoulder. Defendant immediately got out of the Chevrolet and met the trooper at the rear of the Chevrolet. During the course of the stop, under the circumstances later set forth, Trooper McMullin searched the Chevrolet and sealed containers in it. In the containers the trooper found 1,224 pounds of cocaine, the subject of the offense.

---

1. Except where otherwise indicated, all references to statutes are to RSMo 1986, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

Defendant's sole point is that the trial court erred in denying his pretrial motion to suppress the cocaine and in receiving it into evidence "pursuant to a warrantless search of defendant's vehicle and the sealed containers therein" because the search: (a) was not based upon probable cause to believe contraband was in the vehicle; (b) was without any consent to search the vehicle or its contents; and (c) was conducted following the unlawful detention of defendant.

Seeking to uphold the trial court's denial of defendant's motion to suppress, the state argues: (a) probable cause existed for the trooper to search the Chevrolet; and (b) defendant and McCarnes consented to the search.

At the hearing on defendant's motion to suppress, defendant introduced no evidence. The only witness produced by the state concerning the circumstances leading up to and including the search was Trooper McMullin. At the time of the hearing on the motion to suppress, defendant was also charged, in a separate count, with possession of cocaine. Neither in the trial court nor in this court has the state raised any issue concerning defendant's standing to challenge the search.

Trooper McMullin testified, at the hearing on the motion to suppress, that he told defendant that he had stopped him for speeding and asked him for his driver's license and the vehicle registration. Defendant went to the Chevrolet, obtained the vehicle registration, and the two men went to the patrol car.

Defendant's driver's license showed his residence as Los Angeles. The Chevrolet had Illinois license plates and the registration showed that it was owned by one John Jackson of East St. Louis. Defendant told the trooper that he had recently moved to East St. Louis and was living with Jackson. He said he had borrowed the Chevrolet and had driven it to Amarillo, Texas, to visit relatives. Defendant told the trooper that he had been in Amarillo for about a week. Defendant said that McCarnes had made the trip to Texas with him.

While waiting for defendant to get the registration, the trooper noticed another person, James McCarnes, who was lying in the back of the Chevrolet. The trooper saw that McCarnes was "positioned in the Chevrolet van at what I considered to be an elevated level from the floor, as if he were lying on top of something." McCarnes was lying on two cushions and there were blankets beneath the cushions "covering or concealing something." The only luggage the trooper observed while standing at the back of the Chevrolet were two small duffle bags sitting on top of the blankets.

In the patrol car, the trooper asked defendant if he objected if he looked in the van, and defendant said he did not mind and that he didn't care. The trooper began to fill out a consent to search form issued by the highway patrol, but defendant told the trooper he was not going to sign anything. The trooper then called Sgt. Mease and he came to the scene "in two minutes."

Upon the arrival of Sgt. Mease, the trooper went to the passenger side of the Chevrolet, opened the right front door and spoke with McCarnes. He asked McCarnes who owned the Chevrolet, and McCarnes said he thought it belonged to his cousin, Stanley McCarnes, who lived in Los Angeles. The trooper asked McCarnes where they were coming from, and McCarnes answered, "Los Angeles." The trooper asked McCarnes if he had any objection to his looking in the van, and McCarnes said "No."

McCarnes crawled into the front seat, and the trooper opened the right rear door. The trooper saw some boxes partially hidden by the blankets. One of the boxes had a U–Haul logo on it and was a moving box. The trooper testified that he had seen in the past a picture of a seizure made by some Oklahoma authorities of some narcotics taken from a U–Haul box. The trooper testified that he thought there was a possibility the boxes contained narcotics, "due to the way of concealment and the U–Haul boxes."

The flaps on the boxes were covered with tape. The trooper opened the boxes and found "bricks" or packages wrapped with

some type of cling wrap. They were all bricked up uniformly. The trooper testified: "In my experience I have seen similar packages of these bricks, and they had contained cocaine." The trooper removed one brick from the boxes and slit it open with a pocket knife. It contained white powder which the trooper believed to be cocaine. He arrested defendant and McCarnes.

On cross-examination, the trooper testified that defendant had a valid driver's license and that the vehicle registration was in order. There were no warrants outstanding with respect to defendant. He testified that defendant was held at the scene longer than it takes to write a speeding ticket because the trooper became suspicious of certain actions. Defendant had come out of the van to meet the trooper "a little fast, he came out quick."

The trooper testified that he suspected that defendant might be transporting some type of contraband. "What I saw inside the vehicle showed me there was something contraband could have been in, the blankets covering, his getting out of the van quick."

■ In reviewing the trial court's denial of a motion to suppress, the appellate court does not substitute its discretion for that of the trial court and determines only whether there was sufficient evidence to support the trial court's ruling. The weight of the evidence and the credibility of the witnesses are matters for the trial court. *State v. Burkhardt,* 795 S.W.2d 399, 404 (Mo. banc 1990).

### WAS DEFENDANT AGGRIEVED BY THE SEARCH?

"The provisions of Chapter 542, RSMo, shall govern procedure in searches and seizures." Rule 34.01. Section 542.296.1 reads, in pertinent part: "A person aggrieved by an unlawful seizure made by an officer and against whom there is a pending criminal proceeding growing out of the subject matter of the seizure may file a motion to suppress the use in evidence of the property or matter seized." Similarly, in a reference to Rule 41(f) of the Federal Rules of Criminal Procedure, a leading authority has stated: "A motion to suppress may be made only by a 'person aggrieved by an unlawful search and seizure.'" Wright, Federal Practice and Procedure: Crim.2d, § 674.

■ The Fourth Amendment's prohibition against unreasonable searches and seizures is enforceable against the states through the due process clause of the Fourteenth Amendment. Assertions of an unlawful search and seizure should be raised by a motion to suppress under § 542.296. The proponent of such a motion has the burden to establish that his constitutional rights were violated by the challenged search or seizure; however, the burden is on the state to justify a warrantless search and to demonstrate that such falls within an exception to the warrant requirement. *Burkhardt, supra,* at 404.

■ One well established exception is a search of an automobile on the highways pursuant to probable cause to believe that contraband, weapons, or evidence of a crime are within the automobile. The automobile exception stems from the fact that an automobile's mobility often presents an exigent circumstance making it unfeasible to procure a search warrant, and the fact that citizens have a less significant expectation of privacy in their automobiles than in their homes or offices. *Id.*

The initial inquiry is whether *defendant* suffered violation of any Fourth Amendment right.

Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. A person who is aggrieved by an *illegal* search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed. And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections.

*Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978) (emphasis added) (citations omitted). In *Rakas,* the Court rejected the so-called "target theory" under which any criminal defendant at whom a search was "directed" would have standing to contest the legality of that search and object to the admission at the trial of evidence obtained as a result of the search. In *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 2551, 65 L.Ed.2d 619 (1980), the Court said: "In *Rakas,* this Court discarded reliance on concepts of 'standing' in determining whether a defendant is entitled to claim the protections of the exclusionary rule. The inquiry, after *Rakas,* is simply whether the defendant's rights were violated by the allegedly illegal search or seizure."

A prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, "without legal contradiction." *Salvucci,* 448 U.S. at 90, 100 S.Ct. at 2552. Therefore, "[t]he seeming contradiction between finding that control over a motor vehicle by a nonowner driver gives rise to an inference of knowledge of the vehicle's contents and finding that the driver does not have an expectation of privacy in the vehicle or its contents is irrelevant." *U.S. v. Lochan,* 674 F.2d 960, 966 n. 7 (1st Cir.1982).

█ When a defendant files a motion to suppress evidence based on Fourth Amendment grounds, the burden of proof is on him to show "not only" that the search was illegal, "but also that he had a legitimate expectation of privacy" in the thing which was searched. *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). The imposition of the burden of proof on defendant to show that he is "a person aggrieved" is consistent with the holding in *Simmons v. United States,* 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), that testimony given by defendant in support of a motion to suppress cannot be admitted as evidence of his guilt at trial. See also *United States v. Salvucci,* supra, 100 S.Ct. 2547, 2551.

In *United States v. Sanchez,* 943 F.2d 110 (1st Cir.1991), the court said, at 113 n. 1:

Technically, the concept of "standing" has not had a place in Fourth Amendment jurisprudence for more than a decade, since the Supreme Court in *Rakas v. Illinois,* 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law. The Court thus dispensed with standing as "a discrete analytic element apart from the merits" in such cases, *United States v. Bouffard,* 917 F.2d 673, 675 (1st Cir.1990), instead requiring a defendant to prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct."

This opinion will use the term "standing" somewhat imprecisely to refer to this substantive determination.

At a hearing on a motion to suppress, based on Fourth Amendment grounds, it is incumbent upon the movant-defendant to carry the burden "of establishing the scope of his personal Fourth Amendment rights" and even if the government does not "raise that standing issue" at that hearing, the failure is that of the defendant and not that of the government. *United States v. Miller,* 636 F.2d 850, 854 (1st Cir.1980). To similar effect see *United States v. Molina–Garcia,* 634 F.2d 217, 218 (5th Cir.1981). Cf. *Steagald v. United States,* 451 U.S. 204, 101 S.Ct. 1642, 68 L.Ed.2d 38 (1981), where the government was not permitted to raise the issue of standing initially in the supreme court where the government had conceded in the lower courts that the defendant had standing to claim the house was unlawfully searched.

The foregoing principles apply to Fourth Amendment proceedings in Missouri courts and, in general, they also apply where violations of Art. I, Sec. 15 of the Missouri Constitution are asserted. The "reasonable expectation" test for standing under Art. I, Sec. 15 "is identical to the 'legitimate expectation of privacy' test adopted by the United States Supreme Court in the

*Rakas* case." *State v. McCrary*, 621 S.W.2d 266, 273 (Mo. banc 1981).

In *McCrary*, the court said, at 273:

At the hearing on appellant's motion to suppress, appellant made no claim that he had either an actual, subjective expectation of privacy in the cardboard box that was searched or that his expectation of privacy was legitimate. "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *Rakas*, 439 U.S. at 131 n. 1, 99 S.Ct. at 424 n. 1. *See Rawlings v. Kentucky*, 448 U.S. 98, 104, 100 S.Ct. 2556, 2561, 65 L.Ed.2d 633 (1980). Missouri follows this rule."

In *State v. Overstreet*, 694 S.W.2d 491 (Mo.App.1985), the trial court denied defendant's motion to suppress items seized from a car of which defendant was the driver, and defendant asserted that ruling was erroneous. There was no evidence that defendant possessed the car with the consent of the owner. The defendant made no claim that he had either an actual, subjective expectation of privacy in the car or that his expectation of privacy was legitimate. Defendant did not claim to have any right, title or interest in the car or the things seized. The court of appeals upheld the trial court's ruling and stated that defendant did not establish a sufficient interest in the vehicle to assert an expectation of privacy.

"To mount a challenge to a search of a vehicle defendant[ ] must show, among other things, a legitimate basis for being in it, such as permission from the owner. [A defendant] who do[es] not have a legitimate basis for being in a car that is not registered in the name of any of the car's occupants cannot object to the search of the vehicle." *United States v. Ponce*, 947 F.2d 646, 649 (2d Cir.1991) (citing authority).

■ Other federal authorities support the principle that, for Fourth Amendment purposes, the mere fact that defendant was the driver of the searched vehicle does not accord him standing to challenge the search. *United States v. Sanchez, supra; United States v. Rascon*, 922 F.2d 584 (10th Cir.1990); *United States v. Roper*, 918 F.2d 885 (10th Cir.1990); *United States v. Rubio–Rivera*, 917 F.2d 1271 (10th Cir. 1990); *U.S. v. Arango*, 912 F.2d 441 (10th Cir.1990).

In *Sanchez*, the court held that the defendant, who was the driver and sole occupant of the searched vehicle, was entitled to challenge the legality of the search of the vehicle only if he met his burden of showing that he reasonably anticipated privacy in the car. The district court's finding that he did not sustain that burden was upheld.

■ In *Arango*, an appeal from a trial court's denial of defendant-driver's motion to suppress evidence of cocaine found in the vehicle, the court said, at 445:

The government contends that Arango did not have a reasonable expectation of privacy in the truck. We agree. Like the defendant in [*United States v. Erwin*, 875 F.2d 268, 271 (10th Cir.1989)], Arango has failed to introduce evidence that his possession of the truck was lawful. Although we recognize that the proponent of a motion to suppress need not always come forward with legal documentation establishing that he lawfully possessed the area searched, *see U.S. v. Miller*, 821 F.2d 546, 548 & n. 2 (11th Cir.1987) (standing established by uncontradicted testimony of defendant that he borrowed car from friend), the proponent must at least state that he gained possession from the owner or someone with the authority to grant possession.

In *Rubio–Rivera*, the court said, at 1275, that *Arango* required that defendant "must at least state that he gained possession from the owner or someone with the authority to grant possession." The court also said, "Where the defendant offers sufficient evidence indicating that he has permission of the owner to use the vehicle, the defendant plainly has a reasonable expectation of privacy in the vehicle and standing to challenge the search of the vehicle." *Id.*

Defendant did not testify and offered no evidence except that which he elicited on cross-examination of Trooper McMullin. The only evidence concerning the reason for defendant's occupancy of the Chevrolet as its driver came from the trooper who stated that defendant told him that he had borrowed the Chevrolet from John Jackson and had driven it to Texas. The trial court found "that story" was untrue.

In light of the foregoing federal authorities, which are consistent with the Missouri cases previously cited, this opinion, so far as it pertains to defendant's challenge to the search of the Chevrolet, could end at this point because defendant did not show a reasonable expectation of privacy in the vehicle or its contents. However, as this court understands *State v. Milliorn*, 794 S.W.2d 181 (Mo. banc 1990), disposition of this appeal on that basis may be improper.

In *Milliorn*, the state filed an interlocutory appeal from an order of the trial court sustaining the defendant's motion to suppress marijuana found in the camper shell of a pickup truck operated by the defendant. The state's evidence showed that the vehicle was owned by a person other than defendant, that the defendant was driving without a valid operator's license, and that a different license plate number than that displayed on the truck had been assigned to the truck.

Affirming the trial court's order, the supreme court said, at 184:

> The State urges that *State v. Yowell*, 513 S.W.2d 397, 402 (Mo. banc 1974), requires that a criminal defendant bear the burden of producing probative evidence in support of his motion to suppress. Because Milliorn failed to produce such probative evidence here, the State argues that the trial court erred in suppressing the evidence. In response to the State's argument on this issue, we limit our discussion to warrantless searches.
>
> *Yowell* does not control this case. Subsequent to this Court's decision in *Yowell*, Section 542.296, RSMo 1986, took effect. Section 542.296 created new law; it did not have a statutory ante-

cedent. By its clear language Section 542.296.6 places "the burden of going forward with the evidence and the risk of nonpersuasion" on the state "to show by a preponderance of the evidence that the motion to suppress should be overruled." The language of Section 542.296.6 is therefore consistent with cases holding that warrantless searches are presumptively unreasonable and the burden of placing the search within an exception to the warrant requirement falls on the State. *State v. Olds*, 603 S.W.2d 501, 506 (Mo. banc 1980). The State's point is denied.

This court, in *State v. Tipton*, 796 S.W.2d 109, 111 (Mo.App.1990), a case not involving the search of a vehicle, quoted the foregoing language from *Milliorn* and said, at 112:

> The motion to suppress in this case alleged that the specified articles were taken from the person of the defendants and premises in which they had an interest and were seized without a warrant. The unambiguous meaning of § 542.296.6 is that the State had the burden of going forward with the evidence to establish that this motion, which stated a factual basis for suppression, should be overruled. This would include evidence the defendants had "no standing" to make the complaints registered. The State failed to do so. The judgment of the trial court is affirmed.

Judge Hogan filed a dissenting opinion in *Tipton*, in which he said, at 112:

> I do not believe *State v. Milliorn*, 794 S.W.2d 181 (Mo. banc 1990), was intended to relieve the defendant of his burden to show that he was "a person aggrieved by an unlawful seizure" within the meaning of § 542.296.1. Indeed, it seems to me that in *State v. McCrary*, 621 S.W.2d 266, 272–73 (Mo. banc 1981), our Supreme Court took the position that the proponent of a motion to suppress evidence has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.... It is true that § 542.296.6 imposes both the burden of going forward

with the evidence and the risk of nonpersuasion on the State, but reading the statute as a whole, the defendant must show preliminarily that he has been "aggrieved" by an unlawful seizure.

In view of the foregoing language contained in *Milliorn*, and because the state had not raised the issue of standing, this court proceeds to determine whether the trial court's ruling may be justified on either of the grounds, probable cause or consent, argued by the state.

### PROBABLE CAUSE TO SEARCH?

■ An automobile search may be conducted on probable cause to believe that contraband is concealed within, a belief springing from circumstances which would justify issuance of a warrant. Probable cause may arise when the facts and circumstances within the knowledge of the seizing officer are sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend the law. It is not necessary that the trooper be right in his belief that the automobile contained contraband, only that such belief was reasonable. *Burkhardt, supra,* at 404.

■ A trooper who observes a car violating a posted speed limit has authority to stop the car for issuance of a traffic summons. § 304.010.2. While stopping the car for speeding does not alone provide probable cause, it does not preclude a full search of the automobile because the right to search is not dependent upon the right to arrest but upon the probable cause the officer has for belief that the contents of the automobile offend the law. In many instances a traffic violation is a circumstance to consider among the elements giving rise to probable cause justifying a search of the automobile. *Burkhardt,* at 405.

"The fact that the speeding violation occurred on Interstate 44 is also an element to be considered. We take notice that the section of Interstate 44 is ... a notorious route used by drug traffickers bringing controlled substances into this state." *Burkhardt,* at 405. "The troopers need

not have been confronted with a prima facie showing of criminal activity by defendant, but rather they need only have concluded that a probability of criminal activity existed and from this have an acceptable basis for probable cause to believe the automobile was carrying contraband." *Id.* (Citing authority.)

■ A warrantless search of an automobile based upon probable cause to believe that the vehicle contains evidence of crime in light of an exigency arising out of the likely disappearance of the automobile does not contravene the Warrant Clause of the Fourth Amendment. *California v. Acevedo,* — U.S. —, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991). If the police have probable cause to justify a warrantless seizure of an automobile on a public roadway, they may conduct either an immediate or a delayed search of the vehicle. *Id.* A warrantless search of an automobile may include a search of a container or package found inside the automobile when such a search is supported by probable cause. *Id.* The scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. There may be a probing search of containers within the automobile so long as the search is supported by probable cause. *Id.*

■ The scope of a warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *Acevedo,* 111 S.Ct. at 1991. If the police have probable cause to believe that a paper bag in an automobile's trunk contains marijuana, that probable cause allows a warrantless search of the paper bag. If, however, the police did not have probable cause to believe that contraband was within any other part of

the automobile, a search of the entire vehicle would have been without probable cause and unreasonable under the Fourth Amendment. *Id.*

There is one rule to govern all automobile searches. The police may search an automobile and the containers within it where they have probable cause to believe contraband or other evidence is contained. *Id.*

"Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985). "[I]n determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry* .... [A] search is not to be made legal by what it turns up. In law it is good *or bad* when it starts and does not change character from what is dug up subsequently." *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 1633–1634 n. 12, 10 L.Ed.2d 726 (1963) (emphasis in original).

At the time the trooper opened the rear door of the Chevrolet to commence his search, he had knowledge of the following: The vehicle had been exceeding the speed limit; the vehicle was registered in the name of John Jackson who lived in Illinois; defendant had a California driver's license showing his residence in Los Angeles; defendant had told the trooper that he had borrowed the Chevrolet from Jackson and driven it to Amarillo, Texas, where he had spent a week; defendant had told the trooper that McCarnes had made the trip to Texas with him; McCarnes was lying on two cushions and there were blankets beneath the cushions covering or concealing something; the only luggage the trooper had previously observed were two small duffel bags on top of the blankets; McCarnes had told the trooper that he and defendant were coming from Los Angeles and that he thought the vehicle belonged to Stanley McCarnes of Los Angeles; when initially stopped, defendant had not remained in the Chevrolet until the trooper reached it but had come out of the Chevrolet "a little fast, quick" to meet the trooper; the vehicle was stopped on Interstate 44, "a notorious route used by drug traffickers."

This court holds that the foregoing facts and circumstances within the knowledge of Trooper McMullin when he began his search were "sufficient in themselves to produce in a man of reasonable caution a belief that the contents of the automobile offend[ed] the law," *Burkhardt, supra,* at 404, and that he had probable cause to search the vehicle. It is, accordingly, unnecessary to determine whether the search was justified on the independent ground of consent.

### LAWFULNESS OF DETENTION

The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of arrest. *U.S. v. Brignoni–Ponce,* 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975). Although defendant did not show a reasonable expectation of privacy in the vehicle or its contents, and although the trooper had probable cause to search the vehicle, defendant can, of course, challenge his own seizure. If his seizure was illegal, "evidence obtained as a result of the illegal seizure must be excluded as fruit of the poisonous tree." *U.S. v. Arango, supra,* 912 F.2d at 446.

The vehicle driven by defendant was stopped by Trooper McMullin at 7:30 a.m. Most of the events at the scene of the stop have been previously set forth. When Trooper McMullin radioed Sgt. Mease to come to the scene, it took only two minutes for Mease to arrive.

Defendant had a valid California driver's license, listing his address as Los Angeles. The vehicle registration documents, which were in the vehicle, showed the owner to be John Jackson of East St. Louis. Although defendant told the trooper that he didn't care if the trooper looked in the vehicle, he

would not sign the written consent form. Trooper McMullin issued a speeding ticket but ultimately did not give defendant his copy. McMullin testified that he had become suspicious of certain actions of defendant. Defendant had come out of the van to meet McMullin at the back of it, "he came out quick." McMullin had seen only two duffel bags when he looked in the rear window of the vehicle, although defendant had told him that he and McCarnes had been in Texas for a week. McMullin testified that although the vehicle did not belong to defendant, it was a pretty nice vehicle and defendant had taken it on a very long trip.

Defendant is not challenging the legality of his arrest, which took place after the cocaine had been discovered by the trooper. He challenges the reasonableness of his detention during the very few minutes, the specific number unshown, leading up to the trooper's search.

■■■ In *U.S. v. Espinosa,* 782 F.2d 888, 890–891 (10th Cir.1986), the court identified three categories of police/citizen encounters. The first is a consensual police/citizen encounter, characterized by voluntary cooperation of a citizen in response to non-coercive questioning. A consensual detention is not a seizure within the meaning of the Fourth Amendment. The second category is an investigative detention, or a *Terry* stop. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Although an investigative detention is a seizure for Fourth Amendment purposes, it need not be supported by probable cause. An investigative detention is justified where specific and articulable facts and rational inferences from those facts give rise to reasonable suspicion that a person has committed or is committing a crime. The third category, an arrest, is a seizure characterized by highly intrusive or lengthy search or detention and is justified only where there is probable cause to believe that a person is committing or has committed a crime.

■■ "Much as a 'bright line' rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." *U.S. v. Sharpe,* 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985). "[I]n determining whether defendant's detention was reasonable, we examine the totality of all the circumstances." *Espinosa,* at 891.

In varying factual situations, each involving a traffic officer stopping a vehicle for speeding, the reasonableness of the detention, under Fourth Amendment standards, has been discussed and determined. Cases holding the detention reasonable include: *U.S. v. Arango, supra,* and *U.S. v. Hardy,* 855 F.2d 753 (11th Cir.1988). Cases holding the detention unreasonable include: *U.S. v. Walker,* 933 F.2d 812 (10th Cir. 1991), and *U.S. v. Recalde,* 761 F.2d 1448 (10th Cir.1985).

Relevant factors include "the law enforcement purposes served by the detention, the diligence with which the police pursue the investigation, the scope and intrusiveness of the detention, and the duration of the detention." *U.S. v. Hardy, supra,* 855 F.2d at 759.

Here the period of detention was brief, a matter of a very few minutes. Here, as in *Hardy,* the driver had initially consented to the officer looking in the vehicle but refused to sign a written form. Although the registration documents were in the vehicle, they did not show defendant to be the owner, and it was proper for the trooper to inquire of McCarnes as to the ownership of the vehicle and the circumstances of its use. The two police officers were diligent in pursuing their brief investigation during the few minutes of detention. Defendant was not subjected to physical discomfort. During the detention, defendant and McCarnes were not removed to an office or a police station, "a factor that the Supreme Court and this court have found significant in distinguishing *Terry* stops from custodial arrests." *Hardy,* at 760.

In *Walker, supra,* the district court found, and the court of appeals agreed, there was evidence to support the finding that the defendant produced sufficient proof to show he was entitled to operate the car. No such proof was produced here.

In *Recalde, supra,* where the trooper had a "gut instinct" that defendant was transporting narcotics, the defendant was taken to a station five miles away. Although his "brief delay" at the scene of the stop was "inevitable, proper and minimally intrusive," his "subsequent extended detention and movement" were not justified. *Recalde,* at 1455.

This court holds that the brief detention of defendant was reasonable. *U.S. v. Arango, supra,* and *U.S. v. Hardy, supra.* See also *United States v. Turner,* 928 F.2d 956, 958–959 (10th Cir.1991), and *United States v. Deases,* 918 F.2d 118, 122 (10th Cir.1990).

The judgment is affirmed.

SHRUM, P.J., and MAUS, J., concur.