STATE of Missouri, Appellant,

v.

Danny L. PFLEIDERER Respondent.

No. WD 57254.

Missouri Court of Appeals,
Western District.

Dec. 28, 1999.

Pamela Kay Vestal, St. Joseph, for appellant.

Anthony Charles Cardarella, St. Joseph, for respondent.

Before Presiding Judge LAURA DENVIR STITH, Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON.

LAURA DENVIR STITH, Presiding Judge.

The State appeals the trial court's order granting Mr. Pfleiderer's motion to suppress drugs found in a search of his person, arguing the court erred in finding that police officers found the drugs only after illegally arresting and searching Mr. Pfleiderer without probable cause. Because we find that the trial court did not abuse his discretion in finding that Mr. Pfleiderer was put under de facto arrest without probable cause, and that the drugs were the fruit of this illegal detention, and because we find that, even were Mr. Pfleiderer not under arrest, the police acted unreasonably in detaining him in handcuffs without reasonable suspicion of criminal activity based on articulable facts, we affirm.

## I.  STATEMENT OF FACTS

John McLaughlin is an investigator for the Housing and Urban Development agency.  He received a tip from a confidential informant that a woman named Cora Clark and a large black male would be traveling to St Joseph, Missouri in a 1980's silver Cadillac on November 28, 1998, and that they would have with them crack cocaine they had acquired in Kansas City, Missouri.  Investigator McLaughlin passed on this information to Officer Jill Voltmer of the Buchanan County Drug Strike Force (hereinafter, "BCDSF"), an organization with which he had worked on a regular basis.  Officer Voltmer recognized the informant as a person who had provided reliable information in the past. She and other BCDSF officers therefore set up surveillance at a rest stop on northbound Interstate 29 to watch for the 1980's model silver Cadillac.  At approximately 7:00 p.m. that evening, they spotted a car matching that description traveling north on Interstate 29, and began following it. They noticed that one of the occupants matched the informant's description in that the driver was a large black male. They could see that the passenger was white with blondish hair, but could not determine the passenger's gender, and did not know enough about Cora Clark's description to know whether she looked like the passenger.

As they followed the Cadillac, the officers ran the license plate number and found that the plate number was registered to Michael Clark, and that Michael Clark was married to Cora Clark.  They also discovered that the license plate was supposed to be on a Dodge Daytona automobile, not on the Cadillac they were following.  They radioed ahead to the St. Joseph police to set up a roadblock, and continued following the Cadillac.  The

driver of the Cadillac apparently spotted the officers, began to drive erratically, and made a swerving exit off the highway at 28 th Street in St. Joseph. The St. Joseph police were waiting there. The driver drove through a stop sign and continued on, despite now being pursued by a squad car and a BCDSF vehicle, both with their lights and sirens running. The Cadillac finally pulled over four blocks later at the intersection of 28 th Street and Monterey.

Once the Cadillac pulled over, at least two officers from the St. Joseph Police Department pulled the driver and passenger out of the car and handcuffed them. They asked the driver his name, and learned he was Mike Clark. They asked the passenger his name, and learned he was Danny L. Pfleiderer (Defendant herein). The police patted down both Mr. Clark and Defendant Pfleiderer for weapons but found neither weapons nor drugs. The police nonetheless left them in handcuffs while they called for a drug dog to come and sniff for drugs. Shortly thereafter, Officer Voltmer, who was also in pursuit of the Cadillac, and BCDSF Officers Zack Ezzell and Shawn Collie, arrived at the scene. At this point there were therefore at least four officers watching the two handcuffed suspects. Mr. Clark was asked for and gave his verbal consent to search the Cadillac. The officers searched the car but found neither drugs, weapons, nor other evidence of criminal activity. Both Officer Voltmer and Ezzell later testified that neither had reason to believe at this point that Mr. Pfleiderer was involved in criminal activity. They nonetheless continued to detain both him and the driver in handcuffs while waiting for a drug dog to arrive.[1]

The dog arrived about 15 minutes after the police called for it. There is some disagreement in the record as to whether the dog sniffed the car immediately, but in any event the dog never alerted to the car.

However, the dog repeatedly alerted to Mr. Pfleiderer. Officer Ezzell testified that until this point he did not believe Mr. Pfleiderer had been under arrest, and learned that Mr. Pfleiderer had already been patted down for weapons. Nonetheless, in response to the dog's indications, he conducted a more thorough pat down of Mr. Pfleiderer and found two plastic bags filled with crack cocaine in his crotch area.

The following day, Mr. Pfleiderer was charged with the Class A felony of drug trafficking in the first degree in the Associate Circuit Court of Buchanan County. On January 12, 1999, the information was amended, now charging him with only the Class B felony of drug trafficking in the second degree.

On January 25, 1999, Mr. Pfleiderer moved to suppress evidence in the case, including the drugs found on him and his oral statements to police, on the basis that they were the fruit of his illegal arrest and detention without probable cause or reasonable suspicion of criminal activity. After a hearing on the motion at which the above evidence was adduced, Judge Patrick K. Robb issued detailed findings of fact in which he found that Mr. Pfleiderer had been placed under *de facto* arrest when he was handcuffed and restrained of his liberty for 15 minutes without probable cause to believe he was involved in criminal activity and after the police had checked him for weapons. We quote the judge's findings in detail below:

> The Court finds that the stop of the car containing the defendant which was driven by another individual, Michael Clark, was lawful based on the officer's observation that the car ran the stop sign while the officers were following it, and, evidently, preparing to stop the car despite whether or not he would have ran the stop sign. However, the stop sign certainly in this Court's mind justified the stop of the vehicle that the

1. While the record is unclear as to which officer made the call requesting a drug dog come to the scene, the record does show that one of the officers made the call soon after the Cadillac was stopped.

defendant was a passenger in, and, based on that, justified a detention.

The Court, however, finds that the conduct after the stop amounted to a Fourth Amendment violation of the defendant's rights. The Court finds that, based on the officer's own admissions during the hearing, that they had no reason to believe that the defendant was involved in any criminal activity at all. He was not mentioned in the tip that was the basis for them following the vehicle. The tip was that there would be a woman in the car, Cora Clark, with a large black male. The car that they observed and followed had a large black male driving the vehicle and the defendant as the passenger. Once the car was pulled over, justifiably so for the traffic violation, and it was observed that the passenger was not Cora Clark, certainly there was no basis then to arrest him, which in fact is exactly what happened.

The police placed the defendant in custody, handcuffed him. They did not detain him for a brief time, and certainly they could have, I think, detained him and maybe searched him to make sure he had no weapons. But, instead, they placed the defendant in custody by handcuffing him and then held him for over 15 minutes with no articulable facts presented to support the placing of the defendant under arrest, handcuffing him for 15 minutes, and then calling a drug dog to be called to the scene while he was sitting in custody or standing in custody handcuffed.

... The hitting of the dog on the defendant was the result of his being handcuffed, in effect, being under arrest with no probable cause, and that, therefore, the court finds that the search of the defendant was the result of an illegal custodial arrest of the defendant by officers who arrested him and held him in custody, handcuffed him with no probable cause to believe he had committed any offense.

... I think [the officer's] label of not placing him under arrest is inconsistent with the actual facts when he in fact was taken out of the car and handcuffed and held there for 15 minutes.

This Court finds that the illegal arrest of the defendant resulted in him being held there at the scene which resulted in the ultimate seizure of the drug from his person, and that the seizure of the drugs was the fruit of the illegal custodial arrest of the defendant. In the Court's opinion, the police are not allowed to arrest a person, place him in custody, hold him in custody without probable cause to believe that he has committed a crime. To do so in this case, as in this case, is a violation of that individual's Fourth Amendment rights, and the subsequent search of the defendant after his arrest must be suppressed as a violation of those rights.

The State appeals this ruling.

## II. STANDARD OF REVIEW

▆ Where a trial court has granted defendant's motion to suppress, "we review the trial court's decision on appeal under an abuse of discretion standard. Only if the trial court's judgment is clearly erroneous will an appellate court reverse." *State v. Milliorn*, 794 S.W.2d 181, 183 (Mo. banc 1990). Our review is limited to determining whether there is sufficient evidence, gleaned from the record as a whole, to support the trial court's decision. *State v. McFall*, 991 S.W.2d 671, 673 (Mo.App. W.D.1999); *State v. McKeehan*, 894 S.W.2d 216, 218 (Mo.App. S.D.1995). In doing so, we view all the evidence, and reasonable inferences therefrom, in the light most favorable to the lower court's ruling. *Id.* Consideration of the weight of the evidence presented at the hearing on the motion to suppress is within the discretion of the trial court. *Id.* However, "[t]he ultimate issue of whether the Fourth Amendment was violated is a question of law which this court reviews *de novo.*" *McFall*, 991 S.W.2d at 673.

## III. LACK OF PROBABLE CAUSE OR REASONABLE SUSPICION TO JUSTIFY DETENTION

The State agrees that it did not have probable cause to arrest Mr. Pfleiderer at the time it handcuffed him and searched him for drugs. The State argues, however, that it did have a reasonable suspicion based on articulable facts that Mr. Pfleiderer was involved in criminal activity, that this justified his detention for the period of time involved in this case, and that the detention was not of sufficient duration or magnitude to constitute an arrest, as opposed to a mere investigative detention.

■ In resolving this issue, we must first distinguish between arrests and investigative detentions. *State v. Childress*, 828 S.W.2d 935, 944–5 (Mo.App. S.D.1992), addressed the different categories of contact police can have with civilians, and the degree of Fourth Amendment protection afforded in each category. As *Childress* noted, a consensual, or voluntary, encounter of a citizen with police is "characterized by voluntary cooperation of a citizen in response to non-coercive questioning." *Id.Accord, United States v. Espinosa*, 782 F.2d 888, 890–91 (10th Cir.1986). Because such an encounter is voluntary on the part of the citizen, it does not constitute a seizure and so the protections provided under the Fourth Amendment against unreasonable seizures do not apply. *Id.; State v. Talbert*, 873 S.W.2d 321, 323 (Mo.App. S.D.1994). Here, there is no question that Defendant did not voluntarily remain to talk with police. He was handcuffed and forced to remain by the car while the police questioned and searched him, the driver and the car.

■ The next level of encounter between citizens and police is often described as an investigative detention, or a *Terry* stop.[2] While this level of investigative conduct by police "is a seizure for Fourth Amendment purposes, it need not be sup-

ported by probable cause." *Childress*, 828 S.W.2d at 945. *See also Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. 1868. During a *Terry* stop, police officers may stop or detain an individual if they have a reasonable suspicion based on specific and articulable facts from the totality of the circumstances that the person is or was involved in criminal activity. *State v. Franklin*, 841 S.W.2d 639, 641 (Mo. banc 1992); *State v. Duncan*, 879 S.W.2d 749, 751 (Mo.App. W.D.1994); *Terry v. Ohio*, 392 U.S. at 21, 88 S.Ct. 1868. Whether such facts exist depends on the totality of the circumstances. *Duncan*, 879 S.W.2d at 751. "When multiple police officers are working together closely in order to effect an arrest or engage in an investigatory stop, the Fourth Amendment is satisfied if the information known by all of the officers collectively amounts to probable cause or reasonable suspicion." *State v. Hernandez*, 954 S.W.2d 639, 642 (Mo. App. W.D.1997). *See also State v. Miller*, 894 S.W.2d 649, 652 (Mo. banc 1995). Moreover, "[g]enerally, a known informant who has provided reliable information in the past, and who provides information that is immediately verifiable at the scene carries 'enough indicia of reliability to justify a forcible stop …'" *State v. Stillman*, 938 S.W.2d 287, 290 (Mo.App. W.D.1997).

■ Here, it appears to be uncontested that the fact that Officer Voltmer received the information from the informant indirectly through Mr. McLaughlin is of no consequence. And, it appears that the police had reasonable suspicion sufficient to justify the initial stop of the car on the basis of the tip from a known informant about Cora Clark and a large black man traveling northbound on Interstate 29 to St. Joseph in a 1980's model silver Cadillac, as well as based on the traffic violations committed by the driver, Mike Clark. *See Stillman*, 938 S.W.2d at 291 (The fact that inconsistencies exist between the information given by the informant and what was ultimately observed by the officers does not "obliterate the value of the informer's tip"); *State v. McNaughton*, 924

2. This phrase was coined because this type of stop was described and approved by the Su-

preme Court in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

S.W.2d 517, 523 (Mo.App. W.D.1996) (noting detentions of 12–15 minutes as reasonable); *United States v. Bloomfield*, 40 F.3d 910, 915 (8 th Cir.1994). Moreover, "so long as an officer is doing no more than he or she is legally permitted and objectively authorized to do" the officer's motives "do not matter." *State v. Meza*, 941 S.W.2d 779, 780–81 (Mo.App. W.D.1997).

■ And, an officer who lawfully stops a vehicle may, under the Fourth Amendment, order the driver and passengers out of the car. *Pennsylvania v. Mimms*, 434 U.S. 106, 108–12, 98 S.Ct. 330, 332–34, 54 L.Ed.2d 331 (1977) (drivers); *State v. Kovach*, 839 S.W.2d 303, 310 (Mo.App. S.D. 1992). *See also Maryland v. Wilson*, 519 U.S. 408, 410, 117 S.Ct. 882, 884, 137 L.Ed.2d 41 (1997) (passengers); *Johnson v. Grob*, 928 F.Supp. 889, 902 (W.D.Mo. 1996) (with analogous reasoning, the court found that "an officer needs no cause to stop a particular occupant of a vehicle when the vehicle contains another occupant for whom the officers have probable cause to arrest"). In addition, during this type of investigative, or *Terry*, stop, officers may check the occupants for weapons and take reasonably necessary precautions to protect themselves and maintain the status quo during a stop. *United States v. Miller*, 974 F.2d 953, 957 (8 th Cir. 1992).

It is, therefore, not seriously contested that, in light of their knowledge of the suspected drug trafficking and the driver's erratic and evasive driving, it was reasonable for the St. Joseph officers to briefly handcuff the driver and passenger while checking for weapons and until other officers arrived. *Miller*, 974 F.2d at 957 ("[t]he nature of the crime [the officer] suspected, drug trafficking, created a wholly credible concern that at least some of the suspects might be armed."); *United States v. Bautista*, 684 F.2d 1286, 1289–90 (9 th Cir.1982).

The State and the Defendant disagree, however, as to whether the officers were justified in continuing to detain Mr. Pfleiderer in handcuffs after they had made the initial stop and patted him and the driver down for weapons. The police claim that the fact that Mr. Pfleiderer was in the car in which the traffic violations occurred and was with a person who was the subject of the tip justified them in continuing to detain Mr. Pfleiderer, and that the continued detention did not constitute an arrest. Mr. Pfleiderer says that the trial judge acted within his discretion in finding that the police had placed him under *de facto* arrest when they continued to detain him even after they found no weapons on him, and that in any event the police did not have a reasonable basis to continue to detain him even if that detention did not amount to an arrest.

■ There is no bright line test for distinguishing between investigative stops and arrests, *Miller*, 974 F.2d at 957; *State v. Scott*, 926 S.W.2d 864, 869 (Mo.App. S.D.1996). It is clear, however, that an arrest involves a more "intrusive and lengthy search or detention and is justified only where there is probable cause to believe that a person is committing or has committed a crime." *Childress*, 828 S.W.2d at 945. The legislature has defined an arrest as "an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise." Sec. 544.180 RSMo 1994.

■ Even if no formal arrest is made, a *de facto* arrest occurs "when the officers' conduct is more intrusive than necessary for an investigative stop." *United States v. Hill*, 91 F.3d 1064, 1070 (8 th Cir.1996). In deciding whether this standard is met, we look at whether the police used "the least intrusive means of detention reasonably necessary to achieve their investigative purpose." *Bloomfield*, 40 F.3d 910 at 917–18. The factors to be considered in determining whether police conduct constitutes a *de facto* arrest include the "duration of [the] stop, whether the suspect was handcuffed or confined in a police car, whether the suspect was transported or isolated, and 'the degree of fear and humiliation that the police conduct engenders.'" *Hill*, 91 F.3d at 1070 (rejecting a claim of *de facto* arrest where

the suspect was not handcuffed, isolated, taken into custody, or detained for an unreasonable amount of time).

If an arrest is made, either expressly or *de facto*, it must be based on probable cause. Without probable cause, an arrest is illegal. *State v. Kampschroeder*, 985 S.W.2d 396, 398 (Mo.App. E.D. 1999). Probable cause exists when the arresting officer is aware of facts and circumstances that are reasonably trustworthy and would lead a person of reasonable caution to believe an offense had been committed. *State v. Anderson*, 886 S.W.2d 742, 745 (Mo.App. E.D.1994); *State v. Lanear*, 805 S.W.2d 713, 717 (Mo.App. W.D. 1991). If "the government does not argue that [the] officers ... had probable cause.. if we find an arrest, we must find error in the failure to suppress ... as the fruit of the illegal seizure." *United States v. Jones*, 759 F.2d 633, 636 (8th Cir.1985). *See also, Dunaway v. New York*, 442 U.S. 200, 218–19, 99 S.Ct. 2248, 2259–60, 60 L.Ed.2d 824 (1979); *State v. Howell*, 543 S.W.2d 836, 839–40 (Mo.App. S.D.1976).

Here, we cannot say that the trial court abused his discretion in finding that Mr. Pfleiderer was under *de facto* arrest. While such a finding may not have been required by the record, it was within the court's discretion in light of the admissions of the police that they had neither a fear for their safety nor a belief that Mr. Pfleiderer was involved in any criminal activity, in light of his detention in handcuffs, in light of the fact that there is no indication that a less intrusive detention would not have been sufficient, and in light of the fact that he was far outnumbered by the numerous police officers in at least three police cars involved in the stop.[3] While the State argues that this detention was justified by the informant's tip and by

the fact that the car had driven through the stop sign and had an improper license plate, the tip and the traffic violations had nothing to do with Mr. Pfleiderer. He was not mentioned by the informant, he did not match the informant's description of drug activity, he did not drive the car, own it, or commit any traffic violations. Moreover, the police admitted that, once they had searched him for weapons and found none, they had no reason to suspect him of criminal activity and no safety-related reason to leave him in handcuffs. The State failed to present any evidence that the officers had probable cause when they arrested Defendant. Consequently, the discovery of the drugs on him by the dog was a fruit of the illegal arrest and consequently was properly suppressed. *Florida v. Royer*, 460 U.S. 491, 503–05, 103 S.Ct. 1319, 1327–28, 75 L.Ed.2d 229 (1983) (after finding that "[a]s a practical matter [defendant] was under arrest," the Supreme Court affirmed the decision of the Florida District Court of Appeal which reversed the trial court's denial of defendant's motion to suppress the evidence obtained searching defendant's suitcases because police exceeded the bounds set by *Terry* and did not have probable cause to do so).

Finally, even were the trial court wrong in finding that Mr. Pfleiderer was under arrest while being detained in handcuffs, we agree with Mr. Pfleiderer that the police did not have specific or articulable facts which gave them reasonable grounds to suspect Mr. Pfleiderer was involved in criminal activity, and hence did not have a legal basis to continue to detain Mr. Pfleiderer once they searched him for weapons for their own safety. This is because, as noted above, the scope of an

---

3. *United States v. Smith*, 3 F.3d 1088 (7th Cir.1993), cited by the State, is not on point. In that case the police acted with a greater level of information and observation than did the officers in this case. In *Smith*, the officers responded to a call by an employee at the hotel where defendant was staying and continued to communicate with that employee during their investigation which lasted several days. More importantly, the officers reserved rooms at the hotel to conduct surveillance of the activity at the hotel first hand. Finally, although defendant was handcuffed, a police officer did testify that he did so "for safety concerns, considering the time of night, the general environment of the investigation and the nature of the alleged offenses." Here, by contrast, there was no such testimony by police concerning their safety, in fact, they admitted to having no reason to suspect him of any criminal activity.

investigative stop is "keyed to the purposes of the stop, with officers using 'the least intrusive means reasonably available to verify or dispel [their] suspicion[s] in a short period of time.'" *Jones,* 759 F.2d at 642; *State v. Hughes,* 899 S.W.2d 92, 99 (Mo.App.1994); *Kovach,* 839 S.W.2d at 310 ("The question, however, is not simply whether some alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it."). As the Eastern District of this Court has stated:

> If the detention extends beyond the time reasonable necessary to effect its initial purpose, the seizure may lose its lawful character unless a new factual predicate for reasonable suspicion is found during the period of lawful seizure.

*State v. Stevens,* 845 S.W.2d 124, 128 (Mo. App. E.D.1993), *quoted in, State v. Slavin,* 944 S.W.2d 314, 318–19 (Mo.App. W.D. 1997). *See also State v. Bunts,* 867 S.W.2d 277, 280 (Mo.App. S.D.1993).

We do not find that any additional facts arose subsequent to the initial stop and pat down that gave rise to reasonable suspicion or probable cause sufficient to maintain the detention of Mr. Pfleiderer. To the contrary, the police admit that the initial pat down found no drug or weapons, and that nothing connected Mr. Pfleiderer to any drug activity. At this point, no reasonable and articulable facts existed on which to base a reasonable suspicion of criminal activity by the passenger. Therefore, while it may have been permissible under the circumstances to handcuff Mr. Pfleiderer initially, holding him during the car search and the wait for the drug dog violated his Fourth Amendment right to protection from illegal search and seizure. And, any evidence derived therefrom based on his statements or the search is "fruit of the poisonous tree," and was properly suppressed by the court below on that basis.

For the reasons set out above, we affirm the trial court's decision to grant Defendant's motion to suppress.

Judge VICTOR C. HOWARD and Judge THOMAS H. NEWTON concur.