**STATE of Missouri, Plaintiff–Appellant,**

v.

**Michael J. SOLT, Defendant–Respondent.**

No. 24104.

Missouri Court of Appeals, Southern District, Division Two.

June 26, 2001.

Darrell L. Moore, Prosecuting Attorney, Todd Myers, Angela D. Acree, Asst. Pros. Attys., Springfield, for Appellant.

Michael Baker, Springfield, MO, for Respondent.

PREWITT, Judge.

The State appeals from the trial court's order sustaining Defendant's motion to suppress evidence seized from him after officers questioned and searched him during a bus stopover at the Greyhound bus terminal in Springfield.

Certain principles govern review of the trial court's decision on a motion to suppress. The State has the burden of showing by a preponderance of evidence that the motion to suppress should be denied. § 542.296.6, RSMo 2000; *State v. Wells*, 33 S.W.3d 202, 205 (Mo.App.2000). Review of a ruling on a motion to suppress is limited to a determination of whether sufficient evidence exists to sustain the

ruling. *State v. Wise,* 879 S.W.2d 494, 503 (Mo.banc 1994).

■ If the trial court's ruling is plausible in light of the record, the court on appeal is to affirm even though it is convinced that had it been sitting as the trier-of-fact it would have reached a different result. *State v. Milliorn,* 794 S.W.2d 181, 184 (Mo.banc 1990). Deference is given to the trial court's evaluation of the credibility of the witnesses and the weight of the evidence. *State v. Villa–Perez,* 835 S.W.2d 897, 902 (Mo.banc 1992). This Court considers the facts and reasonable inferences arising therefrom in the light most favorable to the trial court's decision. *State v. Garza,* 853 S.W.2d 462, 463 (Mo.App.1993). This Court is to reverse only if the trial court's determination is clearly erroneous. *State v. Page,* 895 S.W.2d 269, 270–71 (Mo. App.1995).

The incident in question occurred at the Greyhound bus station in Springfield. Mondays through Fridays, between six o'clock and seven o'clock a.m., drug enforcement officer Carl Hicks and Greene County deputy sheriff James Ackers, board each eastbound and westbound bus after passengers departing in Springfield have left the bus. The officers were at the bus station to "watch for narcotics couriers aboard the Greyhound buses." [Tr. 3] When asked how they identified narcotics couriers, Hicks said that they board the buses "and talk to each of the passengers on the bus." This is the routine agent Hicks was following on May 23, 2000.

Officer Hicks entered the bus alone, as Officer Ackers had not yet arrived, and talked to each passenger except Defendant, saying he bypassed Defendant because Defendant was asleep. When Ackers arrived, the two officers re-entered the bus to talk to Defendant. Defendant was awake, according to the officers, but asleep, according to him. Between his knees, he had a backpack. Officer Hicks asked Defendant where he had boarded the bus and where he was headed, and he told him he was going from Albuquerque to Hazelton, Pennsylvania. Officer Hicks asked for his ticket and it confirmed those points of travel.

The officer then asked Defendant if the backpack was his and he said it was not. Officer Hicks told Defendant to exit the bus. Hicks took the backpack off the bus. When the two officers and Defendant were in front of the bus, Officer Hicks "advised [Defendant] of his constitutional rights." Hicks told Defendant that he was going to look in the backpack unless Defendant told them that he could not. Defendant stated he said nothing further following Hicks' comment. Hicks stated that Defendant continued to deny that it was his backpack and when Hicks looked in the backpack, he discovered marijuana. Defendant said he denied it was his backpack, as he had only borrowed it. After the officers discovered the marijuana they handcuffed him and had him jailed. At the jail, Officer Ackers searched Defendant and found three marijuana cigarettes in Defendant's shirt pocket.

The State charged Defendant with the class B felony of possession of a controlled substance with intent to distribute. Defendant moved to suppress the seized items from evidence. The court held a hearing on the motion to suppress on October 27, 2000.

Following the hearing, the trial judge stated on the record that he did not "think [the officers] had a reasonable suspicion to arrest [Defendant] and remove him," as Defendant felt he had no choice but to get off the bus. The judge then stated that he did not think this determination was relevant to the backpack, which the State claims Defendant abandoned, but was to

three marijuana cigarettes found in Defendant's pocket. He thus granted the motion to suppress as to the cigarettes but not as to the contents of the backpack.

On January 2, 2001, Defendant filed a motion to reconsider the motion to suppress with suggestions relying upon the United States Supreme Court's decision in *City of Indianapolis v. Edmond*, 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000), decided on November 28, 2000, which held that a state's general interest in crime control is insufficient to justify the suspicionless stops of motorists at a narcotics checkpoint.

The trial court entered an order granting the motion to suppress, from which this appeal was taken, on February 5, 2001. The trial court stated in its findings that:

When the officers came upon the Defendant in the bus, he was asleep. The officer, Carl Hicks, awoke the Defendant to visit with him. The officer showed him his badge and then proceeded to visit with him about general items as well as asked him about his luggage. Again, the officer, Carl Hicks, had no individualized suspicion of wrongdoing on the part of the Defendant. Carl Hicks then asked the Defendant about a green backpack and the Defendant stated that the backpack was not his. The officers then took the Defendant and the backpack off the bus with no suspicion that the Defendant was engaged in any criminal activity.

Finding that the purpose for this "bus stop" was similar to that of the drug checkpoints prohibited by *Edmond*, the trial court concluded:

The practice of law enforcement agencies routinely doing checkpoints, stops or searches at the bus seems to be in direct conflict with the United States Constitution. Therefore, based upon the reasoning in *Indianapolis v. Edmond*, that there has to be individualized suspicion before they can awaken a passenger, remove him and a backpack from the bus, interrogate him, search the backpack and arrest him, this court does sustain Defendant's Motion to Reconsider and therefore does suppress the evidence in this case.

The State appeals the trial court's ruling in its one point relied on, stating that:

The trial court erred in suppressing the State's evidence because there was not an illegal search or seizure, in that the law enforcement officers did not seize [Defendant] when they engaged him in conversation and requested him to exit the bus because a consensual encounter between a police officer and a bus passenger on a bus is not analogous to a drug checkpoint.

Defendant counters that the trial judge was correct because the officers were conducting "an illegal drug checkpoint" and "for the further reason that after questioning, the officer took [Defendant] into custody without reasonable suspicion and searched his backpack, and any abandonment of the backpack was not voluntary." Whether a consensual encounter is analogous to a drug checkpoint, and whether *Edmond* might apply, need not be decided.

"There is no litmus paper test for distinguishing a consensual encounter from a seizure or for ascertaining when a seizure has exceeded the bounds of an investigative stop." *State v. Scott*, 926 S.W.2d 864, 869 (Mo.App.1996). The United States Supreme Court has rejected adopting any per se rule regarding when a police-citizen encounter on a bus becomes a detainment requiring reasonable suspicion or an arrest requiring probable cause; rather, "a court must consider all the circumstances surrounding the encounter to determine

whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Florida v. Bostick*, 501 U.S. 429, 439–40, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). However, the Court has stated that a seizure may occur where there is "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). *See also Scott*, 926 S.W.2d at 869.

In *State v. Pfleiderer*, 8 S.W.3d 249 (Mo. App.1999), the Western District, in determining whether the dog sniff and search of a passenger in a car driven by an individual the police were told may be trafficking drugs was illegal, distinguished the three categories of contact police may have with civilians and the degree of Fourth Amendment protection afforded in each category. The first category is the voluntary, consensual encounter between a citizen and the police, which is " 'characterized by voluntary cooperation of a citizen in response to non-coercive questioning.' " *Id.* at 254 (quoting *State v. Childress*, 828 S.W.2d 935, 944–45 (Mo.App.1992)). Because the encounter is voluntary, Fourth Amendment protections do not apply. *Id.*

The next level of encounter is the investigative detention, or *Terry* stop, which, although a seizure, requires only reasonable suspicion based on specific and articulable facts that a person is or was involved in criminal activity, not probable cause. *Id.* In an investigative stop, an officer must use the least intrusive means available to verify or dispel his or her suspicion in a short period of time. *Id.* at 257. During

the stop, an officer can order the driver and passengers of a lawfully-stopped car out of the vehicle, check them for weapons, and take "reasonable precautions to protect [himself] and maintain the status quo during the stop." *See id.* at 255.

The third level of an encounter, an arrest, "involves a more 'intrusive and lengthy search or detention and is justified only where there is probable cause to believe that a person is committing or has committed a crime.' " *Id.* at 255 (quoting *Childress*, 828 S.W.2d at 945). An arrest is defined by the legislature as " 'an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise.' " *Id.* (quoting § 544 .180). In determining whether a de facto arrest has been made, the court may consider such things as "the 'duration of [the] stop, whether the suspect was handcuffed or confined in a police car, whether the suspect was transported or isolated, and the degree of fear and humiliation that the police conduct engenders.' " *Id.* (quoting *United States v. Hill*, 91 F.3d 1064, 1070 (8th Cir.1996)). Because defendant Pfleiderer was handcuffed and detained without reasonable suspicion, the court found that the evidence derived from the dog sniff and subsequent pat down was properly excluded by the trial court. *Id.* at 257.

In *State v. Talbert*, 873 S.W.2d 321 (Mo. App.1994), this district upheld the trial court's order suppressing evidence found in a bus encounter with Agent Hicks and another officer. In affirming the trial court's order, this district held that the facts that the defendant, a bus passenger, had a day's growth of beard and did not leave his travel bag on the bus during a stopover, did not provide reasonable suspicion for a *Terry* stop, and that the trial court's conclusion that defendant did not voluntarily consent to the officers' request

to search his bag was not clearly erroneous. We noted, "A police-citizen encounter which is consensual in its inception may lose that characteristic later if the officers, by means of physical force or show of authority, in some way convey the message that compliance with their requests is required, in which event a seizure occurs triggering Fourth Amendment scrutiny." *Talbert*, 873 S.W.2d at 324. Because there was evidence from which the trial court could determine that the nature of the encounter between the officers and defendant had changed from consensual to nonconsensual, we determined that the suppression of the evidence was not in error. In discussing whether defendant's consent to the search was voluntary, we noted,

A consent to search which is preceded by a Fourth Amendment violation is valid only if it is in fact voluntary. To qualify as such, the consent must be sufficiently an act of free will so as to purge the taint of the illegal detention. Whether the consent is in fact voluntary is determined by looking at the totality of the circumstances and is an issue upon which the State bears the burden. The State does not satisfy its burden of showing the consent was voluntary by merely showing a submission to a claim of lawful authority.

Three factors are to be considered in determining whether consent is in fact voluntary: (1) the temporal proximity of the illegal detention and the consent; (2) any intervening circumstances; and (3) the purpose and flagrancy of the officer's conduct.

*Id.* at 324–35. (Citations omitted). In determining that the trial court's conclusion that the nature of the encounter became nonconsensual was not clearly erroneous, this court cited Officer Hicks' reported demeanor, the fact that the officers held defendant's claim check, and

that defendant was never told "he was free to leave, did not have to answer questions, or did not have to consent to the search." *Id.* at 325.

■ Here, the trial court found that the officers awakened Defendant and showed him a badge, but they did not tell him that he did not have to answer questions or that he did not have to exit the bus. This could certainly lead the Defendant to believe that he was not free to decline to answer the questions or ignore the officers' request. Agent Hicks stated that before he asked Defendant to exit the bus he determined to detain him. The trial court was justified in finding that at the time Defendant was detained, the officers did not have any reasonable suspicion to believe that Defendant had committed any criminal act.

■ Ordinarily, a defendant who voluntarily abandons property has no standing to contest its search and seizure, but this is not true if the abandonment results from a Fourth Amendment violation, as such an abandonment cannot be voluntary. *U.S. v. Stephens*, 206 F.3d 914, 917 (9th Cir.2000). Abandonment will not be recognized when it is the result of illegal police conduct. *Id.*

■ *Stephens* and *U.S. v. Washington*, 151 F.3d 1354 (11th Cir.1998), involved officers boarding buses looking for narcotics. The courts in both cases determined that searches conducted on the buses were improper. Here, we have the additional fact that the officers took Defendant off the bus to search him, thus the seizure was even more apparent than in *Stephens* and *Washington*. Apart from abandonment, there was no justification for the search of the backpack, and, as the trial court could correctly determine that the abandonment was due to an improper seizure of Defendant, the search was unjustified.

The order sustaining Defendant's motion to suppress is affirmed.

BARNEY, C.J., and GARRISON, J., concur.